# United States Court of Appeals
## For the First Circuit

————————————

No. 97-1885

UNITED STATES OF AMERICA,

Appellee,

v.

KENNETH W. BRASSARD,

Defendant, Appellant.

————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Raymond J. Pettine, U.S. District Judge]

————————————

Before

Boudin, Stahl, and Lynch,
Circuit Judges.

————————————

Peter F. Kuntz, by appointment of the court, for appellant.
Kenneth W. Brassard pro se.
Kathleen A. Felton, Attorney, Criminal Division, U.S. Department
of Justice, with whom Margaret E. Curran, United States Attorney, and
Richard W. Rose, Assistant U.S. Attorney, were on brief, for appellee.

————————————

May 12, 2000

————————————

**LYNCH, Circuit Judge**.  Following a jury trial, Kenneth W. Brassard was convicted of attempted possession with intent to distribute cocaine, see 21 U.S.C. §§ 841(a)(1), 846, and use of a firearm during and in relation to a drug trafficking offense, see 18 U.S.C. § 924(c)(1).  He was sentenced to consecutive terms of 5 years imprisonment, as well as four years of supervised release.  His appeal alleges various and numerous errors by the district court at trial and sentencing, none of which has merit.  Consequently, we affirm.

**I.**

The government says that Brassard was caught in a straightforward reverse sting operation; Brassard says he was entrapped.  Each side presented its version of events to the jury, an outline of which follows.

Brassard owned a janitorial services company that had contracts to clean several Burger King franchises in southern New England. Seeking additional contracts, in June 1995, he went to speak to Ronald Rego, the manager of a Burger King.  Unbeknownst to Brassard, Rego was an informant for the Providence Police.  Rego testified that Brassard, in order to get a contract, offered him a kickback, which he refused.  He then testified that, after he mentioned to Brassard that he also worked at a Spanish nightclub, Brassard asked him if he knew anyone "in the business," meaning the drug business.  Rego testified further that Brassard pestered him until Rego put him in contact with

a drug dealer.  In fact, the person with whom Rego put Brassard in contact was a detective with the Providence Police.

Claiming entrapment, Brassard testified that Rego pressured him into finding buyers for his drugs, and Brassard, desperate for work after losing two accounts and having his car mysteriously ruined, feigned interest so that Rego would give him a cleaning contract.  Finally, Brassard says, he agreed to a plan in which he would buy cocaine provided that Rego would take the drugs from him and sell them himself.  Rego, Brassard said, coached him on how to act like a drug dealer and told him to bring a gun to the drug purchase.  Rego was motivated, Brassard alleged, by a deal he had with the Providence Police to recoup a percentage of moneys forfeited as a result of his tips.

In January 1996, Rego's handler, Detective Frank DellaVentura of the Providence Police, gave Detective Freddy Rocha, an undercover narcotics officer, Brassard's phone number.  Rocha was to pose as a drug dealer named Raul.  DellaVentura said that Brassard was expecting "Raul" to call him about a drug deal.  After a few conversations in which Rocha and Brassard discussed the quantity and price of the drugs, as well as, allegedly, Brassard's past history as a drug dealer, Brassard agreed to purchase a kilogram of cocaine from Rocha for $18,000.  Brassard was to place a down payment of $5000, with the remainder secured by Brassard's mobile home as collateral.  The

conversations between Rocha and Brassard were recorded.  Brassard and Rego arranged to meet at the Marriott Hotel, in Providence, Rhode Island, on January 26, 1996.  After the exchange of cash for cocaine was made in a hotel bathroom, Brassard was arrested as he attempted to leave.  A loaded handgun was found on him.

## II.

Brassard, through his attorney and pro se, raises seven grounds for appeal.

1. Discovery

Brassard says that the district court erred when it conditioned further discovery of information as to promises, inducements, or rewards made to the informant Rego on the calling of the informant as a witness at trial.  General information had been provided before trial.  Brassard says that, if he had received the additional information before trial, he would not have had to call Rego as a witness, a witness who was clearly more favorable to the government.  This amounts, he says, to a violation of Brady v. Maryland, 373 U.S. 83 (1963).  The government says that it turned over all relevant information a month before trial, including the total amount paid to Rego from prior closed cases, and that the district court ordered more specific disclosures (the precise amounts paid to Rego in each case) in sufficient time for the defense to make use of them at trial.

-4-

We review for abuse of discretion, see United States v. Josleyn, 99 F.3d 1182, 1196 (1st Cir. 1996), and there was none. Production was ordered in adequate time for the information to be used effectively by the defense at trial. We reject the argument that the late production of more detailed evidence, if late it was, forced the defense to call the informant Rego as a witness, or that it caused prejudice. See Strickler v. Greene, 119 S. Ct. 1936, 1948 (1999); Josleyn, 99 F.3d at 1196.

2. Government's Opening

Brassard says that the district court should have granted his motion for a mistrial after the government, in its opening argument, made one impermissible reference to inadmissible hearsay evidence. We review for abuse of discretion. See United States v. Sepulveda, 15 F.3d 1161, 1184 (1st Cir. 1993). Brassard objected to the prosecutor's statement, "Now the Defendant asked the informant if he knew where the Defendant could purchase a large quantity of cocaine. As I already told you, unbeknownst to the Defendant, however, the informant had been employed by the Government on several prior occasions." The objection was based on the prosecution's assertion that it did not intend to call the informant Rego as a witness. The hearsay statement contradicted Brassard's version of who introduced the topic of drugs, and the question of who first introduced the topic of drugs was pertinent to the entrapment defense. In response to the objection, the trial

prosecutor argued that the information could be introduced without calling Rego as a witness. The district court disagreed and sustained the objection. Brassard then turned down the court's offer of a curative instruction and, instead, moved for a mistrial. The judge denied the motion. The government now acknowledges that the prosecutor erred in making the statement, but says that the error was harmless.

The district court judge did not abuse his discretion. The offending remark was brief, the judge had told the jury that counsel's statement was not evidence, the judge offered a curative instruction, and it is likely that, coming when it did, the remark had no effect. As noted in United States v. Brandon, 17 F.3d 409, 446 (1st Cir. 1994), "[t]he level of prejudice, if any, was not sufficiently significant to overturn the judge's decision to accept the defendant['s] tactical choice to forgo more appropriate methods of addressing the potential prejudice in favor of the unrealistic and unnecessary solution of a dismissal or a new trial."

3. Tape Recordings

Brassard, pro se, says that the tape recordings and transcripts of conversations between him and the undercover agent were impermissibly admitted because no foundation was laid, because the first tape was incomplete, and because the tapes were not properly authenticated. We review for abuse of discretion. See United States v. Carbone, 798 F.2d 21, 24 (1st Cir. 1986). In his testimony,

Detective Rocha, who made the recordings and transcripts, laid proper foundation and made proper authentication of the tapes and the transcripts, explaining how the first minute was irreparably damaged while he was making copies of the tapes. See United States v. Doyon, 194 F.3d 207, 212-13 (1st Cir. 1999). While the initial moments of one of the tapes were destroyed, that did not make that tape inadmissible. See id. Further, there was ample cross-examination of Detective Rocha on the substance of the conversation that took place during the missing portion of the tape to allow the jury to evaluate for itself the content and importance of that part as to both the prosecution's and the defense's cases. See id.

4. Questioning of Informant

Brassard says that the district court erred when it allowed the government, over his objection, to ask the informant certain questions, which, he contends, elicited inadmissible hearsay and violated the Constitution's Confrontation Clause. See U.S. Const. amend. VI. He challenges, in particular, Rego's testimony that his Burger King district manager, Gary Poulin, "blew right up" when he heard that Rego was considering Brassard for a cleaning contract, as well as Rego's explanation of why Poulin reacted that way (which included the statement "I guess they [i.e., Burger King] had a problem . . . about drugs"). The government's questioning did not elicit hearsay because the testimony was not offered for its truth but to show

-7-

that Rego had a reason not to hire Brassard and decided so quickly. Further, there are no Confrontation Clause issues because Poulin, the declarant, later testified at trial. <u>See</u> <u>United States</u> v. <u>Palow</u>, 777 F.2d 52, 57 (1st Cir. 1985).

5. Cross-examination of Brassard

Brassard says that the court erred, in violation of Federal Rule of Evidence 608(b), when it allowed the government to cross-examine him and question two Burger King employees regarding Brassard's prior employment history with Burger King, particularly the reasons for Burger King's termination of its contract with Brassard's company.[1] Brassard made no objection to this line of questioning at trial and so review is for plain error. <u>See</u> <u>United States</u> v. <u>Conley</u>, 186 F.3d 7, 15 (1st Cir. 1999). This questioning was not improper impeachment in violation of Rule 608(b) because Brassard's prior employment history with Burger King was not a specific instance of conduct for the purpose of attacking his credibility, nor was the questioning about a collateral unrelated matter. The questioning was relevant to rebut Brassard's entrapment defense: the evidence made it clear that Brassard

---

[1]    Rule 608(b) states, in pertinent part:

Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of a crime as provided in rule 609, may not be proved by extrinsic evidence.

Fed. R. Evid. 608(b).

-8-

knew he would not get a Burger King contract, thereby making it more likely that Brassard was the one who initiated the drug-dealing conversation.

6. Sentencing

Brassard says that the district court erred in the computation of his offense level for sentencing because he "lack[ed] the resources to buy as agreed." Thus, pointing to the last sentence of application note 12 of § 2D1.1 of the United States Sentencing Guidelines, he claims that he should have been treated like a seller who "was not reasonably capable of providing[] the agreed-upon quantity of the controlled substance," and the court should have "exclude[d] from the offense level determination the amount of the controlled substance that . . . he . . . was not reasonably capable" of purchasing. U.S.S.G. § 2D1.1, application note 12.

There was no error in sentencing. Brassard agreed and intended to purchase one kilogram of cocaine. Application note 12 of the Sentencing Guidelines, § 2D1.1, specifies that, "in a reverse sting, the agreed-upon quantity of the controlled substance would more accurately reflect the scale of the offense because the amount actually delivered is controlled by the government, not by the defendant." The last sentence of application note 12, relied on by Brassard and quoted above, which deals with a defendant selling drugs, clearly does not apply. See United States v. Gomez, 103 F.3d 249, 252-53 (2d Cir.

1997).  See generally United States v. Williams, 109 F.3d 502, 511-12 (8th Cir. 1997) (noting that courts applied the last sentence of the pre-1995 version of application note 12 to reverse stings, but not deciding whether the same should be done after the 1995 amendments, which, inter alia, added specific language concerning reverse stings).

7. Ineffective Assistance of Counsel

Brassard, pro se, says that his trial counsel was ineffective.  This claim is premature and inappropriate to hear on direct appeal "[s]ince the existing record does not enable reliable appellate review."  United States v. Ademaj, 170 F.3d 58, 64 (1st Cir.), cert. denied, 120 S. Ct. 206 (1999).

**III.**

For these reasons, we affirm the judgment and sentence of the district court.