276 Neb. 327
JOHN J. STURZENEGGER, AN INDIVIDUAL, APPELLANT,
v.
FATHER FLANAGAN'S BOYS' HOME, A NEBRASKA CORPORATION, ET AL., APPELLEES.
No. S-06-1364.
Supreme Court of Nebraska.
Filed August 8, 2008.
Theodore R. Boecker and Jason M. Bruno, of Sherrets & Boecker, L.L.C., for appellant.
James Martin Davis, of Davis Law Offices, for appellees Father Flanagan's Boys' Home and Glenn A. Moore.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
GERRARD, J.

NATURE OF CASE
John J. Sturzenegger sued Father Flanagan's Boys' Home (Boys Town) and a former Boys Town teacher based on an alleged instance of sexual abuse that occurred while Sturzenegger was a resident of Boys Town. After a rather contentious trial, a jury rejected Sturzenegger's claims and the district court entered judgment against him. Sturzenegger appeals, claiming that the court erred in several rulings during the course of the trial. The primary issue presented in this appeal is whether the court erred in permitting evidence of Sturzenegger's character and behavior before the alleged incident. But Sturzenegger argued that many of his personal problems were caused by the alleged abuse. So, evidence that he had those problems before the alleged abuse was relevant to prove that he did not have injuries resulting from sexual abuse, and that no abuse occurred. We affirm the judgment of the district court.

BACKGROUND
This litigation began when Sturzenegger filed a complaint against several defendants, including Boys Town and Glenn A. Moore, a former teacher at Boys Town. Boys Town and Moore are the only defendants who remain relevant to this appeal. Sturzenegger's operative third amended complaint alleged that Sturzenegger began living at Boys Town in 1997, when he was 13 years old. Sturzenegger alleged that Moore, an assistant family teacher at Boys Town, made sexual advances toward Sturzenegger and fondled his genitals, "thereby traumatizing" him.
At trial, Sturzenegger testified that he had been placed in Boys Town when he was 13 because he was having some "family problems." Sturzenegger said he was not using drugs or alcohol at that time. While he was at Boys Town, he and eight other boys lived in a house with their family teachers and Moore, the assistant family teacher. Moore did not live with them, but had a room in the residence for when he stayed overnight, usually on weekends. For reasons that will be apparent later, it is relevant to note that Moore is African-American. Sturzenegger said that he trusted Moore and went to Moore when he had problems.
Sturzenegger was diabetic and had to regulate his diet. His teachers, including Moore, helped him monitor his blood sugar. Sturzenegger testified that on the evening of August 23, 1997, his blood sugar was low, so he had been in and out of Moore's office checking his blood sugar. Sturzenegger said Moore asked him what he would do for $5. According to Sturzenegger, Moore asked him if he would run around the house naked for $5, and when Sturzenegger said no, Moore asked again. Sturzenegger said he thought Moore was kidding. Sturzenegger testified that then,
I went to the bathroom. Came back to the office. Checked my blood sugars. They were low again. Went to get some orange juice, came back to the office, sat down. Remember climbing into the chair that was next to the fridge. [Moore] asked me  started making more advances toward me. He said, would you masturbate in front of me for $5. Can I get you up for $5. Stuff like that. I kind of felt pressured into it. So I pulled down my pants a little bit and kind of started to touch myself and he just rolled his chair . . . over to me and pulled my pants down the rest of the way and started fondling me.
Sturzenegger testified that this went on for 60 to 90 seconds, before Moore asked Sturzenegger if he was nervous. Sturzenegger said he told Moore to stop touching him, and Moore did. Sturzenegger said he pulled up his pants and left the room, but returned and confronted Moore. Moore asked what he could do "to make it right" and offered to give Sturzenegger candy or money, or to be more lenient with discipline. Sturzenegger said that after the incident, Moore was more lenient with his discipline.
Sturzenegger testified about a number of personal problems that he attributed to the alleged sexual abuse. For instance, Sturzenegger testified,
I still wake up three to four times a week in a hot sweat after  especially since this trial has been coming up. It's been happening more and more. Thinking, dreaming about [Moore] at night and him redoing this over and over to me. It just scares me. I have a racial problem. Racial hatred towards black people because of what happened to me. Just lots of other things. My attitude isn't always what it should be.
. . . .
. . . My attitude is bad most of the time. I have poor attitude because I look down upon myself because I didn't stop this from happening to myself. Sturzenegger testified that he had been using illegal drugs and had some issues with sexual function because of what he alleged Moore had done to him. And Sturzenegger adduced expert psychological testimony linking his claimed symptoms to the alleged sexual abuse and to support the diagnoses of posttraumatic stress disorder, polysubstance abuse disorder, and sexual dysfunction.
On cross-examination, Sturzenegger was questioned extensively and aggressively regarding instances of misconduct that occurred while he was at Boys Town, and other instances of wrongdoing. He was questioned regarding drug use, before and after the alleged incident. And other witnesses testified regarding Sturzenegger's misconduct, particularly at Boys Town. But not all of the incidents about which Sturzenegger was crossexamined were substantiated by other evidence. Sturzenegger was also cross-examined, over objection, about factual allegations in his superseded pleadings that were inconsistent with his operative complaint and trial testimony. The superseded pleadings were later admitted into evidence.
Sturzenegger also testified on cross-examination regarding a polygraph examination that he said he had taken and passed. References to polygraph examinations had been precluded by a motion in limine. But on cross-examination, Sturzenegger responded to a question from Boys Town's counsel by telling counsel, "Men, you know my word is good. And that's pursuant to the testimony I cannot give here today." Counsel asked the court to admonish Sturzenegger, but the court refused. Later, Sturzenegger again responded to a question about his credibility by saying, "[p]ursuant to the testimony that's not allowed here, you know I'm telling the truth."
Counsel began to ask for an admonishment, but withdrew it, and asked Sturzenegger, "[w]hat is this evidence that you say you have that the jury can't hear?" Sturzenegger testified that he had taken and passed a polygraph test. Another colloquy, and a discussion had outside the presence of the jury on a separate objection, suggests that when Boys Town's counsel asked the question, he had been unaware of the polygraph examination about which Sturzenegger testified.
During the same sidebar discussion, Sturzenegger's counsel said that he was "going to ask [Sturzenegger] on redirect about that polygraph examination and I have every right to because he opened the door and he talked about it." The court ruled on the unrelated objection, but said, "I'm not saying you can't talk about the polygraph test." However, Sturzenegger's counsel did not ask him about the polygraph during his redirect examination, and it does not appear from the record that any other evidence of the polygraph was offered at trial, aside from two more instances in which Sturzenegger volunteered it after Boys Town's counsel questioned his credibility. The court later reinstated its prohibition of and reference to polygraphs.
When Moore testified, he denied Sturzenegger's allegations. According to Moore, he and Sturzenegger did not get along well and Sturzenegger had used profanity and racial slurs against Moore. Moore recalled that Sturzenegger's blood sugar had been off on the night of the alleged incident, but denied making sexual overtures to Sturzenegger, having any sexual contact with Sturzenegger, or offering Sturzenegger money to do anything.
On cross-examination, Moore was not asked whether or not he had refused a polygraph examination. But during the testimony of the Boys Town police officer who investigated the incident, an offer of proof had been made that Moore had refused a polygraph. Moore's counsel did ask the officer whether he had arrested Moore, and the officer testified, without objection, that he had not. Sturzenegger proffered the officer's report of his investigation, but Boys Town's hearsay objection was sustained.
Boys Town also adduced testimony from Dr. Terry Davis, a psychiatrist, about whether Sturzenegger suffered from any mental disorder and whether "he had suffered any psychological] injury or damage as a result of' the alleged sexual assault. Davis diagnosed Sturzenegger with "malingering," "polysubstance dependence," and "antisocial personality disorder." Davis explained that "malingering" is "a diagnosis that is given to reflect an intentional false or grossly exaggerated report of physical or psychiatric symptoms for purposes of what's called an external incentive for purposes of obtaining financial compensation, avoiding work, avoiding military duty, obtaining drugs." Davis said the diagnosis was based, in part, on a discrepancy between claimed disability and objective evidence, and a lack of cooperation with evaluation and treatment. Sturzenegger made a continuing objection to this testimony. Davis concluded, contrary to Sturzenegger's evidence, that Sturzenegger did not suffer from posttraumatic stress disorder.
Davis' opinions were based, in part, on psychological tests administered by Dr. Rosanna Jones Thurman, a psychologist in Davis' office. Over objection, Davis was permitted to testify regarding his assessment of the test results and how they supported his diagnoses.
Before the case was submitted to the jury, Sturzenegger asked to have the jury instructed on alternative theories of recovery, including breach of warranty. Sturzenegger had alleged and testified that he had been assured by Boys Town that he would be safe there. The proffered instructions were refused.
In closing statement, Boys Town's counsel was extremely critical of Sturzenegger's credibility and of the evidence presented by Sturzenegger's attorneys. Boys Town's counsel referred on several occasions to the volumes of evidence that Sturzenegger's attorneys had produced, essentially arguing that all of that evidence was intended to obscure the fact that Sturzenegger had not proved his case. Boys Town's counsel also argued that 435 children lived at Boys Town and that Sturzenegger was "asking [the jury] to take a million dollars away from those 435 kids and put it in his pocket." Sturzenegger's objection to that remark was sustained.
In sum, Sturzenegger made three objections during Boys Town's closing argument. Two of those objections were sustained, including the objection specifically mentioned above, but Sturzenegger did not ask to have the offending remarks stricken or to have the jury admonished to disregard them. Nor did Sturzenegger move for a mistrial.
The jury returned verdicts for Boys Town and Moore, and the court entered judgment accordingly. Sturzenegger appeals.

ASSIGNMENTS OF ERROR
Sturzenegger assigns, consolidated, restated, and renumbered, that the district court erred in
(1) precluding Sturzenegger from referring to or allowing the jury to consider his successful polygraph examination;
(2) refusing to allow evidence that Sturzenegger volunteered to take a polygraph examination;
(3) refusing to allow evidence of either Moore's refusal to take a polygraph examination or his inconsistent testimony of his willingness to take one;
(4) failing to grant a new trial after Boys Town and Moore referenced that Moore was not arrested;
(5) sustaining a motion to quash filed by Moore which prevented Sturzenegger from obtaining information about whether Boys Town was paying for Moore's defense;
(6) refusing to allow into evidence the result of Boys Town's investigation of Sturzenegger's allegations;
(7) allowing improper character evidence of Sturzenegger;
(8) allowing evidence of specific bad acts of Sturzenegger;
(9) allowing questioning of Sturzenegger based upon inadmissible evidence that was not supported by later witnesses at trial;
(10) allowing cross-examination and evidence based on Sturzenegger's superseded pleadings;
(11) allowing Davis to testify regarding reports which were lacking in foundation and should have been excluded under Schafersman v. Agland Coop;[1]
(12) allowing Davis to offer his opinion about Sturzenegger's truthfulness;
(13) failing to grant a mistrial based on improper argument during Boys Town's closing statement;
(14) failing to grant a new trial after Boys Town's counsel made comments to the jury regarding the financial ramifications a verdict would have on Boys Town;
(15) refusing to instruct the jury on Sturzenegger's claims for breach of warranty and breach of contract; and
(16) issuing so many erroneous rulings that the aggregate effect denied Sturzenegger due process and a fair trial.

STANDARD OF REVIEW
[1-4] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by such rules; judicial discretion is involved only when the rules make such discretion a factor in determining admissibility.[2] A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion.[3] In particular, whether evidence is admissible for any proper purpose under Neb. Evid. R. 404(2)[4] rests within the discretion of the trial court,[5] as does a determination pursuant to Neb. Evid. R. 608(2)[6] regarding cross-examination of a witness on specific instances of conduct.[7]
[5-9] A trial court's ruling in receiving or excluding an expert's testimony which is otherwise relevant will be reversed only when there has been an abuse of discretion.[8] Decisions regarding discovery, motions for mistrial, and motions for new trial are also directed to the discretion of the trial court, and will be upheld in the absence of an abuse of discretion.[9] A judicial abuse of discretion requires that the reasons or rulings of a trial judge be clearly untenable, unfairly depriving a litigant of a substantial right and a just result.[10]
[10,11] Whether the jury instructions given by a trial court are correct is a question of law. When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.[11]

ANALYSIS
POLYGRAPH EVIDENCE
[12] Sturzenegger's first three assignments of error all generally relate to polygraph examinations. As an underlying principle, it is clear under established Nebraska law that the results of polygraph examinations are not admissible into evidence.[12] And on appeal, Sturzenegger does not take issue with those holdings. Instead, Sturzenegger argues that Boys Town "opened the door" to polygraph examination results during cross-examination. And Sturzenegger argues that his and Moore's willingness to submit to polygraph examination was relevant to their credibility. We address each point in turn.
[13] Initially, we find no merit to Sturzenegger's argument that Boys Town opened the door to Sturzenegger's alleged polygraph results, for several reasons. First, it appears that following Boys Town's cross-examination of Sturzenegger, Sturzenegger made no offer of proof with respect to polygraph results. Pursuant to Neb. Evid. R. 103(1)(b),[13] error may not be predicated upon a ruling which excludes evidence unless the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked. So, in order to predicate error upon a ruling of the court refusing to permit a witness to testify, or to answer a specific question, the record must show an offer to prove the facts sought to be elicited.[14] In this case, Sturzenegger did not offer, at trial, to prove the circumstances and foundation for the claimed polygraph examination.
[14] Beyond that, Boys Town did not "open the door" to discussion of a polygraph examination. The concept of "opening the door" is a rule of expanded relevancy which authorizes admitting evidence which otherwise would have been irrelevant in order to respond to (1) admissible evidence which generates an issue or (2) inadmissible evidence admitted by the court over objection.[15] The rule is most often applied to situations where evidence adduced or comments made by one party make otherwise irrelevant evidence highly relevant or require some response or rebutta1.[16] "Opening the door" is simply a contention that competent evidence which was previously irrelevant is now relevant through the opponent's admission of other evidence on the same issue.[17]
But here, Sturzenegger is not arguing that responsive evidence should have been admittedhe is arguing that more inadmissible evidence should have been admitted to bolster the same, irrelevant point. And it is questionable whether Boys Town's counsel was responsible for introducing the subject of polygraphs. The colloquy relied upon by Sturzenegger only occurred after Sturzenegger, in response to direct but proper questions about his credibility, repeatedly volunteered references to testimony that he "cannot give." Boys Town's counsel only pursued the issue with Sturzenegger after his request to admonish Sturzenegger had been denied. In other words, the colloquy now relied upon by Sturzenegger as "opening the door" began with Sturzenegger's own repeated references to evidence he knew to be inadmissible, not Boys Town's question in response to Sturzenegger's volunteered statement.
[15] In short, we find no abuse of discretion in the district court's handling of polygraph examination results. But Sturzenegger also argues that his simple willingness to submit to a polygraph and Moore's alleged unwillingness were also admissible. This argument is equally without merit. We have, in fact, specifically disapproved any reference to polygraph tests at trial.[18] And we agree with courts which have held that evidence relating to a witness' willingness or refusal to take a polygraph examination is generally inadmissible.[19]
While an inadvertent reference to a polygraph examination may not be reversible error,[20] polygraph results are excluded because polygraph examinations are not wholly accurate.[21] It would make little sense to find relevance in a party's willingness or refusal to submit to an inaccurate, inadmissible test.[22] And what little relevance could be found is substantially outweighed by the danger of unfair prejudice,[23] as the jurors could be confused about whether a polygraph had actually been given and are likely to speculate about what the result of such a test could have been. In fact, the effect on the jurors of the knowledge of a witness' readiness or refusal to submit to something which the jurors might well assume would effectively determine guilt or innocence could be more devastating than actually disclosing the results of such a test, which would at least require scientific foundation.[24] We conclude that evidence of Sturzenegger's and Moore's willingness to submit to a polygraph was properly excluded.
Finally, Sturzenegger argues that he should have been allowed to cross-examine Moore about his willingness to submit to a polygraph because of an alleged inconsistency in Moore's deposition testimony. Sturzenegger contends that during his initial interview with Boys Town police, Moore agreed to take a polygraph, but that in his deposition, Moore denied agreeing to take a polygraph.
We reject Sturzenegger's argument that he should have been permitted to cross-examine Moore on this point. First, we disagree with Sturzenegger's interpretation of Moore's deposition. According to police, when Moore was initially interviewed, he agreed to take a polygraph. But later, he refused. At his deposition, Moore was asked if had agreed to take a polygraph, and he said that he had not. But when he was asked whether that had been his initial response, he said he did not remember and also did not remember how long he had taken before he refused a polygraph. In other words, contrary to Sturzenegger's argument, Moore testified at his deposition that he eventually refused a polygraph, but did not remember whether he had initially agreed.
Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, may be inquired to on cross-examination in the discretion of the court.[25] Here, the probative value of the evidence, as to credibility, was minimal. Moore had testified only that he did not remember initially agreeing to take a polygraphhe did not deny doing so. And the subject of the alleged conduct involved evidence that was inadmissible for other reasonsthe reference to a polygraph examination. It was not an abuse of discretion to exclude it on that basis, even to the extent the evidence was relevant to credibility.
For the foregoing reasons, we find Sturzenegger's assignments of error relating to polygraph examinations to be without merit.
REFERENCE TO MOORE'S NOT BEING ARRESTED Sturzenegger argues that the district court should have granted a new trial because evidence was adduced that Moore had not been arrested. The district court, in ruling on the parties' motions in limine, had ordered that no reference be made to the fact that the county attorney had not prosecuted Moore. But those rulings did not expressly preclude evidence that Moore had not been arrested by Boys Town police.
[16] And when the Boys Town police officer who interviewed Moore was asked whether he had arrested Moore, Sturzenegger did not object. In fact, on redirect examination, Sturzenegger's counsel immediately asked the officer why he had not arrested Moore, and was told that the officer "wanted the opinion of the county attorney." Sturzenegger did not complain about the question until the next day. In short, Sturzenegger did not make a timely objection to the testimony about which he now complains, and even pursued the subject on redirect examination. It is well established that if, when inadmissible evidence is offered, the party against whom such evidence is offered consents to its introduction, or fails to object or to insist upon a ruling on an objection to the introduction of the evidence, and otherwise fails to raise the question as to its admissibility, that party is considered to have waived whatever objection the party may have had thereto, and the evidence is in the record for consideration the same as other evidence.[26]
[17] Sturzenegger also argues, in his appellate brief, that Moore testified that the county attorney did not prosecute him. But Moore's brief does not identify where, in the record, this testimony supposedly occurred, nor did we find any such testimony, or objection thereto, in our review of the record. Neb. Ct. R. App. P. § 2-109(D)(1)(f) and (g) requires that factual recitations be annotated to the record, whether they appear in the statement of facts or argument section of a brief. The failure to do so may result in an appellate court's overlooking a fact or otherwise treating the matter under review as if the represented fact does not exist.[27] Thus, we find no basis for Sturzenegger's argument.
In short, Sturzenegger has waived his argument with respect to this evidence by failing to make a timely objection or direct us to the basis for his argument in the record. We find no merit to his assignments of error.

PAYMENT FOR MOORE'S DEFENSE
Sturzenegger argues that the district court abused its discretion in quashing his subpoena for records of payments made to Moore's attorney. Sturzenegger's argument, in essence, is that if Boys Town were paying for Moore's defense, Moore might be biased, and Sturzenegger should have been permitted discovery to explore that bias.
Sturzenegger cites no authority in support of his claim that he was entitled to discovery on this matter, nor are we able to discern in what way such information might be relevant to Moore's credibility. Moore had no motive to admit to sexual abuse, regardless of who might have been paying for his defense.
[18,19] Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of any other party.[28] But the party asserting error in a discovery ruling bears the burden of showing that the ruling was an abuse of discretion.[29] Sturzenegger has not demonstrated the relevance of the information sought here and, therefore, has not shown an abuse of discretion.

BOYS TOWN POLICE REPORT
Sturzenegger argues that the court erred in sustaining Boys Town's hearsay objection to the Boys Town police report memorializing the Boys Town police investigation of the alleged incident. We agree that the district court erred in excluding the police report, but conclude that Sturzenegger was not prejudiced by the error.
Sturzenegger argues that the police report was admissible for several reasons. We agree with his argument that based on the contents of the report and the foundation presented, the report was admissible pursuant to the business records exception to the hearsay rule,[30] although, strictly speaking, Sturzenegger should have offered a redacted copy of the report that excluded any reference to polygraph examinations.[31]
[20,21] But an erroneous exclusion of evidence is reversible only if the complaining litigant was prejudiced by the exclusion of such evidence.[32] And an improper exclusion of evidence is ordinarily not prejudicial where substantially similar evidence is admitted without objection.[33] Here, all of the information in the police report was obtained through the investigation of the police officer who testified at trial. That officer, and other witnesses interviewed during the investigation, testified at trial about the events of the investigation that were described in the report, excepting some statements that were excluded on other grounds. With the exception of polygraph-related evidence, Sturzenegger does not complain on appeal about any other excluded statements.
In short, the substance of the admissible evidence in the police report came into evidence anyway, through other testimony. Therefore, although the district court erred in excluding the police report, we find that the error was not prejudicial to Sturzenegger.

CHARACTER EVIDENCE AND CROSS-EXAMINATION OF STURZENEGGER
Sturzenegger assigns several errors with respect to purported character evidence, prior bad acts, and improper crossexamination. First and foremost, Sturzenegger complains about evidence that, generally summarized, established that Sturzenegger had engaged in misconduct before and at the time of his alleged sexual abuse.
[22] We note, initially, that our review on this issue is made more difficult by the "shotgun" approach to argument taken by Sturzenegger's appellate brief. In order that assignments of error concerning the admission or rejection of evidence may be considered, an appellate court requires that appropriate references be made to the specific evidence against which an objection is urged.[34] Sturzenegger's appellate argument provides a broad generalization of a multitude of "examples" of erroneously admitted evidence, instead of specific arguments directed at specific rulings.
But even considered generally, Sturzenegger's appellate argument lacks merit. He claims, in essence, that evidence of his conduct and misconduct was simply a "smear campaign" intended to discredit him.[35] He frames his argument under rules 404 and 608 and Neb. Evid. R. 609,[36] and we do likewise. We agree that under those rules, ordinarily, evidence of the kind at issue in this case would be inadmissible. But here, the evidence was admissible to show that Sturzenegger's psychological damages existed before he was allegedly abused.
[23-25] Rule 404(2) prohibits the admission of other bad acts evidence for the purpose of proving the character of a person in order to show that he or she acted in conformity therewith. The reason for the rule is that such evidence, despite its relevance, creates the risk of a decision by the trier of fact on an improper basis.[37] However, evidence of prior bad acts which is relevant for any purpose other than to show the actor's propensity is admissible under rule 404(2).[38] Evidence that is offered for a proper purpose is often referred to as having "special" or "independent relevance," which means its relevance does not depend on its tendency to show propensity.[39]
[26] The record in this case is clear about the specific, independent purposes for which the evidence at issue was offered.[40] Much of the evidence complained of by Sturzenegger was relevant because Sturzenegger's misconduct at Boys Town was punished by Moore, which was relevant because it may have given Sturzenegger a motive to accuse Moore of abusing him. But more importantly, the theory of Sturzenegger's case was that the alleged sexual abuse had caused psychological damage, symptomized by racism, drug abuse, continued antisocial behavior, and diagnosed mental illness. Sturzenegger himself testified to bad acts that he had committed after the alleged abuse, claiming they had been caused by Moore. Evidence of Sturzenegger's conduct before and around the time of the alleged incident was relevant to rebut Sturzenegger's claim. Evidence of a plaintiff's prior bad acts may be admitted, pursuant to rule 404(2), where it rebuts the plaintiff's evidence of damages.[41] The district court in this case did not abuse its discretion in concluding that, generally, the evidence at issue was independently relevant to the issue of Sturzenegger's damages.
[27,28] Nor does rule 608 bar admission of the evidence. Given the theory on which the evidence at issue was admitted, rule 404, and not rule 608, provides the framework for determining its admissibility. Whether rule 404(2) or rule 608(2) applies to the admissibility of other-acts evidence depends on the purpose for which the proponent introduced the other-acts evidence.[42] Rule 404(2) applies when extrinsic evidence is offered as relevant to a material issue in the case.[43] Rule 608(2) applies when extrinsic evidence is offered to impeach a witness, to show the character of the witness for untruthfulnessin other words, where the only theory of relevance is impeachment by prior misconduct.[44] So, because rule 608(2) affects only evidence of prior instances of conduct when properly relevant solely for the purpose of attacking or supporting a witness' credibility, it in no way affects the admission of evidence of such prior acts for other purposes under rule 404(2).[45]
[29] Thus, the application of rule 608(2) to exclude extrinsic evidence of a witness' conduct is limited to instances where the evidence is introduced to show a witness' general character for truthfulness.[46] Evidence relevant to a material issue is not rendered inadmissible because it happens to include references to specific bad acts of a witness, and such evidence should be admitted where it is introduced to disprove a specific fact material to the case.[47] Rule 608(2) does not bar evidence introduced to contradictand which the jury might find to disprovea witness' testimony as to a material issue of the case.[48]
[30] And in this case, as already explained, the evidence at issue was relevant to the issues of Sturzenegger's bias against Moore and Sturzenegger's alleged damages. First, the selfinterest of a witness, as opposed to his general character, is not a collateral issue. Evidence that happens to include prior misconduct may still be admissible when offered to show the witness' possible bias or self-interest in testifying.[49] And Sturzenegger's damages were obviously at issue. Thus, although some of the evidence certainly reflected on Sturzenegger's credibility, the evidence was independently relevant for a proper purpose.[50] For the same reasons, Sturzenegger's argument under rule 609 is equally unavailing.[51]
Generally, an appellate court gives wide latitude to the trial judge in determining the admissibility of evidence, because the trial judge is in the best position to assess the impact and effect of evidence based upon what the trial judge perceives from the live proceedings of a trial, while the appellate court can review only a cold record.[52] In this case, given the unique allegations made by Sturzenegger, and with due deference to the district court's exercise of its discretion, we find no abuse of such discretion in the court's admission of evidence relating to Sturzenegger's conduct and misconduct before the alleged abuse.
Sturzenegger also argues that he was improperly cross-examined about incidents which were not corroborated by later evidencespecifically, an instance of animal cruelty and evidence of Sturzenegger's conduct in middle school. But the fact that extrinsic evidence was not presented to prove the basis for a cross-examination question does not make the question improperquite the opposite. Although not precisely applicable to the unique issues presented by this case, Neb. Evid. R. 405(1)[53] and rule 608(2) expressly contemplate that specific incidents of a witness' conduct may be inquired into on crossexamination without proof by extrinsic evidence. In fact, under those circumstances, extrinsic evidence may be inadmissible, and the cross-examiner may be "stuck" with the answer given by the witness.[54]
In this case, Boys Town directly asked Sturzenegger about certain misconduct and Sturzenegger was able to either explain or deny it. Boys Town was not required to prove the basis for those questions, and the district court did not abuse its discretion in permitting them to be asked.
[31] Finally, Sturzenegger argues that he was improperly cross-examined with respect to inconsistent factual allegations in his superseded pleadings. We disagree. While a superseded pleading is no longer a judicial admission, it is admissible as evidence of the facts alleged therein, and may be introduced and considered the same as any other evidence.[55] The district court did not err in permitting the pleadings to be admitted into evidence and in permitting Sturzenegger to be cross-examined with respect to the inconsistent descriptions of the alleged sexual abuse that they contained.
For those reasons, we find no merit to Sturzenegger's assignments of error with respect to character evidence, prior bad acts, and cross-examination.

DAVIS' EXPERT TESTIMONY
[32] Sturzenegger raises two arguments with respect to Davis' expert testimony. First, Sturzenegger argues that Davis' opinion was improperly based upon a personality test conducted by Thurman. In making that argument, Sturzenegger has invoked Daubert v. Merrell Dow Pharmaceuticals, Inc.,[56] and Schafersman v. Agland Coop.[57] Under Daubert and Schafersman, the trial court acts as a gatekeeper to ensure the evidentiary relevance and reliability of an expert's opinion.[58] This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is valid and whether that reasoning or methodology can be applied to the facts in issue.[59] In addition, the trial court must determine if the witness has applied the methodology in a reliable manner.[60]
[33] But it is only when a party opposing an expert's testimony has sufficiently called into question the testimony's factual basis, data, principles, or methods, or their application, that the trial judge must determine whether the testimony has a reliable basis in the knowledge and experience of the relevant discipline.[61] Here, the only purported "methodology" that Sturzenegger challenges is Davis' use of results from a test that was administered by another medical professional. Such reliance on another's work is clearly permissible under the rules of evidence, so long as the facts or data relied upon are of a type reasonably relied upon by experts in the particular field.[62] And more to the point, Sturzenegger's argument does not identify any methodological defect underlying Davis' opinion. The court did not err in permitting Davis to provide expert testimony based, in part, on tests administered by Thurman.
Sturzenegger also argues that Davis' diagnosis of "malingering" was an improper opinion on Sturzenegger's credibility. We have held that "`"`[n]o witness, expert or otherwise, should be permitted to give an opinion that another mentally and physically competent witness is telling the truth.'"'"[63] But testimony that contradicts that of another witness is not improper. Sturzenegger testified to the psychological symptoms that he claimed were caused by Moore and adduced expert testimony opining he suffered from, among other things, posttraumatic stress disorder. It was not improper for Davis to opine, based on adequate foundation, that Sturzenegger was not suffering from those conditions or to offer a different diagnosis to explain Sturzenegger's evidence.
If this case involved a physical injury, there would be no question that expert testimony refuting the plaintiff's claim of a physical disability would be admissible. The fact that the claimed injury in this case is mental does not change the applicable principles of law. Having reviewed Davis' testimony, we find no error in admitting his opinion regarding Sturzenegger's mental condition. We find no merit to Sturzenegger's assignments of error.

CLOSING ARGUMENT
Sturzenegger argues that several remarks in Boys Town's closing argument were prejudicial. But Sturzenegger objected only three times during Boys Town's closing. Of the objections that were made, two were sustained. Sturzenegger did not move for a mistrial or even ask that the jury be admonished to disregard the remarks. And Sturzenegger did not ask for a mistrial before the cause was submitted to the jury.
[34,35] Sturzenegger now claims that the court should have declared a mistrial. But in order to preserve, as a ground of appeal, an opponent's misconduct during closing argument, the aggrieved party must have objected to the improper remarks no later than at the conclusion of the argument.[64] And an aggrieved party wishing a mistrial because of an opponent's misconduct during argument is required to move for such before the cause is submitted.[65] On balance, given Sturzenegger's failure to object to nearly all of the remarks about which he complains on appeal and his failure to make a timely motion for mistrial, we conclude that the court did not abuse its discretion in failing to enter a mistrial.[66]
In arguing to the contrary, Sturzenegger specifically assigns error to Boys Town's reference to the potential financial effect of a million-dollar verdict on Boys Town's juvenile residents. This remark was certainly improper. But Sturzenegger's objection to the remark was immediately sustained. He did not ask for the jury to be admonished to disregard any financial effect on Boys Town. And Boys Town's general charitable mission was apparent from the evidence presented at trial, even to the extent that Douglas County jurors could have been expected to not know about it already.
[36,37] A mistrial is appropriate when an event occurs during the course of a trial which is of such a nature that its damaging effects would prevent a fair trial.[67] And in addition to being timely, a motion for mistrial must be premised upon actual prejudice, not the mere possibility of prejudice.[68] When considered in context, we cannot conclude that the isolated remark made by Boys Town's counsel was so prejudicial as to prevent a fair trial or could not have been cured by the admonition that Sturzenegger did not request. And when Boys Town's closing argument is read as a whole, it is admittedly forceful, but not beyond the realm of acceptable argument, particularly given Sturzenegger's general refusal to object. Therefore, we find no merit to Sturzenegger's assignments of error regarding Boys Town's closing argument.

INSTRUCTION ON BREACH OF CONTRACT AND WARRANTY
Sturzenegger argues that the district court should have instructed the jury on his theories of recovery for breach of contract and breach of warranty. Sturzenegger argues that breach of contract was recognized as a theory of recovery under similar circumstances by this court's decision in K.M.H. v. Lutheran Gen. Hosp.[69]
In K.M.H., a patient sued a hospital after she was sexually assaulted by a male nurse. We reversed a summary judgment entered for the hospital, finding that the petition alleged "in general terms an implied contract, imposing upon the hospital the duty and obligation to provide plaintiff a private, secure environment for her care and to protect her privacy, safety, and security."[70]
But unlike K.M.H., this is not an appeal from a summary judgment. The district court's decision to refuse Sturzenegger's breach of warranty instruction was made after a complete trial, and based on the evidence presented, we conclude that Sturzenegger was not prejudiced by the district court's refusal.
[38] To establish reversible error from a court's failure to give a requested jury instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction was warranted by the evidence, and (3) the appellant was prejudiced by the court's failure to give the requested instruction.[71] Here, even assuming (without deciding) that Sturzenegger's proposed instruction was a correct statement of the law and warranted by the evidence, there was no prejudice. Sturzenegger's evidence did not establish any basis for awarding damages other than those caused by sexual abuse. The theory of Boys Town's defense was that the alleged abuse had not occurred. And Sturzenegger's testimony did not establish any duty on the part of Boys Town, based in warranty or contract, that was greater than its duty in tort to prevent Sturzenegger from being sexually abused.
In short, the evidence did not establish any duty or damages based on breach of warranty that was not coextensive with those encompassed by the tort theory on which the jury was instructed. Therefore, Sturzenegger did not show that he was prejudiced by the court's refusal of his breach of warranty instruction.
[39] Sturzenegger also argues, briefly, that the court should have instructed on other theories, such as intentional infliction of emotional distress. Those theories suffer from the same defect as his breach of warranty argument. Furthermore, Sturzenegger only assigned as error the court's refusal of contract and warranty theories. And errors argued but not assigned will not be considered on appeal.[72]
For those reasons, we find no merit to Sturzenegger's assignment of error relating to jury instructions.

CUMULATIVE ERROR
Finally, Sturzenegger argues that the cumulative effect of the district court's purported errors denied him a fair trial. For the reasons discussed above with respect to each of Sturzenegger's assignments of error, we also find no merit to his claim of cumulative error.

CONCLUSION
For each of the above reasons, we find no error requiring reversal, and we affirm the judgment of the district court.
AFFIRMED.
NOTES
[1] Schafersman v. Agland Coop, 262 Neb. 215, 631 N.W.2d 862 (2001).
[2] Karel v. Nebraska Health Sys., 274 Neb. 175, 738 N.W.2d 831 (2007).
[3] Id.
[4] Neb. Rev. Stat. § 27-404(2) (Reissue 1995).
[5] See, State v. Carter, 255 Neb. 591, 586 N.W.2d 818 (1998); State v. Egger, 8 Neb. App. 740, 601 N.W.2d 785 (1999).
[6] Neb. Rev. Stat. § 27-608(2) (Reissue 1995).
[7] See, id.; State v. Messerstnith, 238 Neb. 924, 473 N.W.2d 83 (1991); State v. King, 197 Neb. 729, 250 N.W.2d 655 (1977).
[8] Bellino v. McGrath, 274 Neb. 130, 738 N.W.2d 434 (2007).
[9] See, Malchow v. Doyle, 275 Neb. 530, 748 N.W.2d 28 (2008); Poppe v. Siefker, 274 Neb. 1, 735 N.W.2d 784 (2007); Nichols v. Busse, 243 Neb. 811, 503 N.W.2d 173 (1993).
[10] Maska v. Maska, 274 Neb. 629, 742 N.W.2d 492 (2007).
[11] See Karel, supra note 2.
[12] See, e.g., Mathes v. City of Omaha, 254 Neb. 269, 576 N.W.2d 181 (1998); State v. Allen, 252 Neb. 187, 560 N.W.2d 829 (1997), disapproved on other grounds, State v. Myers, 258 Neb. 300, 603 N.W.2d 378 (1999); State v. Temple, 192 Neb. 442, 222 N.W.2d 356 (1974).
[13] See Neb. Rev. Stat. § 27-103(1)(b) (Reissue 1995).
[14] Talle v. Nebraska Dept. of Soc. Servs., 253 Neb. 823, 572 N.W.2d 790 (1998).
[15] State v. Lessley, 257 Neb. 903, 601 N.W.2d 521 (1999); State v. Harrold, 256 Neb. 829, 593 N.W.2d 299 (1999).
[16] Id.
[17] Id.
[18] See Temple, supra note 12.
[19] See, e.g., United Fire and Cas. v. Historic Preservation, 265 F.3d 722 (8th Cir. 2001); U.S. v. Vigliatura, 878 F.2d 1346 (11th Cir. 1989); deVries v. St. Paul Fire and Marine Ins. Co., 716 F.2d 939 (1st Cir. 1983); Rollins v. State, 362 Ark. 279, 208 S.W.3d 215 (2005); State v. Webber, 260 Kan. 263, 918 P.2d 609 (1996); Industrial Indem. Co. v. Kallevig, 114 Wash. 2d 907, 792 P.2d 520 (1990); State v. Dery, 545 A.2d 1014 (R.I. 1988); State v. Britson, 130 Ariz. 380, 636 P.2d 628 (1981); Moore v. State, 267 Ind. 270, 369 N.E.2d 628 (1977); State v. Mower, 314 A.2d 840 (Me. 1974); Penn v. Com., 417 S.W.2d 258 (Ky. 1967); State v. Perry, 274 Minn. 1, 142 N.W.2d 573 (1966); People v. Carter, 48 Cal. 2d 737, 312 P.2d 665 (1957); People v. Muniz, No. 03CA0268, 2008 WL 451740 (Colo. App. Feb. 21, 2008). Cf. Temple, supra note 12.
[20] See State v. Houser, 234 Neb. 310, 450 N.W.2d 697 (1990) (collecting cases).
[21] See Mathes, supra note 12.
[22] See, Carter, supra note 19; Muniz, supra note 19.
[23] See Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 1995).
[24] See Perry, supra note 19.
[25] See § 27-608(2).
[26] R.W. v. Schrein, 264 Neb. 818, 652 N.W.2d 574 (2002).
[27] See Smith v. Colorado Organ Recovery Sys., 269 Neb. 578, 694 N.W.2d 610 (2005).
[28] Larkin v. Ethicon, Inc., 251 Neb. 169, 556 N.W.2d 44 (1996).
[29] Future Motels, Inc. v. Custer CO,. Bd. of Equal., 252 Neb. 565, 563 N.W.2d 785 (1997).
[30] See, Neb. Evid. R. 803(5), Neb. Rev. Stat. § 27-803(5) (Cum. Supp. 2006); Sacco v. Carothers, 257 Neb. 672, 601 N.W.2d 493 (1999).
[31] See, Holman v. Papio-Missouri River Nat. Resources Dist., 246 Neb. 787, 523 N.W.2d 510 (1994); In re Interest of Kyle 0., 14 Neb. App. 61, 703 N.W.2d 909 (2005).
[32] V.C. v. Casady, 262 Neb. 714, 634 N.W.2d 798 (2001).
[33] Livingston v. Metropolitan Util. Dist., 269 Neb. 301, 692 N.W.2d 475 (2005).
[34] In re Estate of Jeffrey B., 268 Neb. 761, 688 N.W.2d 135 (2004).
[35] Brief for appellant at 25.
[36] Neb. Rev. Stat. § 27-609 (Reissue 1995).
[37] See State v. Sanchez, 257 Neb. 291, 597 N.W.2d 361 (1999).
[38] See, State v. Kuehn, 273 Neb. 219, 728 N.W.2d 589 (2007); Sanchez, supra note 37.
[39] See Sanchez, supra note 37.
[40] Compare id.
[41] See, e.g., Lounds v. Torres, 217 Fed. Appx. 755 (10th Cir. 2007); Burke v. Spartanics, Ltd., 252 F.3d 131 (2d Cir. 2001); Udemba v. Nicoli, 237 F.3d 8 (1st Cir. 2001); Lewis v. District of Columbia, 793 F.2d 361 (D.C. Cir. 1986); Fletcher v. City of New York, 54 F. Supp. 2d 328 (S.D.N.Y. 1999). Cf. Rawlings v. Andersen, 195 Neb. 686, 240 N.W.2d 568 (1976).
[42] See U.S. v. Morgan, 505 F.3d 332 (5th Cir. 2007).
[43] See id.
[44] See, id.; U.S. v. Chu, 5 F.3d 1244 (9th Cir. 1993), citing 3 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence ¶ 608[5] (1993).
[45] See U.S. v. Farias-Farias, 925 F.2d 805 (5th Cir. 1991).
[46] Id.
[47] See, U.S. v. Calle, 822 F.2d 1016 (11th Cir. 1987); United States v. Opager, 589 F.2d 799 (5th Cir. 1979).
[48] See Calle, supra note 47.
[49] See id. Cf. Davis v. Alaska, 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974).
[50] See U.S. v. Blum, 62 F.3d 63 (2d Cir. 1995). See, also, U.S. v. Gray, 24 Fed. Appx. 358 (6th Cir. 2001); U.S. v. Brassard, 212 F.3d 54 (1st Cir. 2000).
[51] See U.S. v. Soria, 965 F.2d 436 (7th Cir. 1992).
[52] Stumpf v. Nintendo of America, 257 Neb. 920, 601 N.W.2d 735 (1999).
[53] Neb. Rev. Stat. § 27-405(1) (Reissue 1995).
[54] See State v. Faust, 265 Neb. 845, 660 N.W.2d 844 (2003), disapproved on other grounds, State v. McCulloch, 274 Neb. 636, 742 N.W.2d 727 (2007).
[55] See, Whalen v. U S West Communications, 253 Neb. 334, 570 N.W.2d 531 (1997); Sleezer v. Lang, 170 Neb. 239, 102 N.W.2d 435 (1960).
[56] Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).
[57] Schafersman, supra note 1.
[58] Smith, supra note 27.
[59] Id.
[60] Id.
[61] See Zimmerman v. Powell, 268 Neb. 422, 684 N.W.2d 1 (2004).
[62] See Vacanti v. Master Electronics Corp., 245 Neb. 586, 514 N.W.2d 319 (1994).
[63] See State v. Archie, 273 Neb. 612, 633, 733 N.W.2d 513, 531 (2007).
[64] Wendeln v. Beatrice Manor, 271 Neb. 373, 712 N.W.2d 226 (2006); Steele v. Sedlacek, 267 Neb. 1, 673 N.W.2d 1 (2003); Wolfe v. Abraham, 244 Neb. 337, 506 N.W.2d 692 (1993).
[65] Wolfe, supra note 64.
[66] See Nichols, supra note 9.
[67] 67 Genthon v. Kratville, 270 Neb. 74, 701 N.W.2d 334 (2005).
[68] Id.
[69] K.M.H. v. Lutheran Gen. Hosp., 230 Neb. 269, 431 N.W.2d 606 (1988).
[70] Id. at 272-73, 431 N.W.2d at 608-09.
[71] Castillo v. Young, 272 Neb. 240, 720 N.W.2d 40 (2006).
[72] Fickle v. State, 273 Neb. 990, 735 N.W.2d 754 (2007).