DAVID KAREL, SPECIAL ADMINISTRATOR OF THE ESTATE OF TINA KAREL, DECEASED, AND AUSTIN KAREL, A MINOR, BY AND THROUGH DAVID KAREL, HIS GUARDIAN AND NEXT BEST FRIEND, APPELLANTS, V. NEBRASKA HEALTH SYSTEMS, A NEBRASKA NONPROFIT CORPORATION, DOING BUSINESS AS CLARKSON WEST EMERGICARE, AND SCOTT MENOLASCINO, M.D., APPELLEES.

738 N.W.2d 831

Filed August 24, 2007.    No. S-05-1311.

Terrence J. Salerno for appellants.

John R. Douglas, of Cassem, Tierney, Adams, Gotch & Douglas, for appellees.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

PER CURIAM.
This is an appeal from a judgment in favor of Nebraska Health Systems, doing business as Clarkson West EmergiCare (Clarkson West), and Scott Menolascino, M.D., defendants in a medical malpractice action brought by the special administrator of the estate of Tina Karel, deceased. The primary issue presented is whether the district court erred in excluding evidence of print and radio advertisements produced by Clarkson West. We conclude that it did not, and affirm the judgment.

## FACTS
The operative facts in this case occurred on September 27 and 28, 2000. At that time, Clarkson West was an emergency medical facility in Omaha, Nebraska, operated as a division of Nebraska Health Systems, a Nebraska nonprofit

corporation. Menolascino worked at Clarkson West as an emergency physician. According to Menolascino, Clarkson West held itself out as a full-service emergency room, open 24 hours per day and capable of addressing life-threatening conditions.

Menolascino was on duty at Clarkson West when Karel arrived there at 7:24 p.m. on September 27, 2000. At the time of Karel's admission, a nurse recorded that Karel's chief complaints included difficulty breathing, pain and thickness in her throat, bilateral arm pain, pain in her teeth, and difficulty swallowing. Menolascino then saw Karel and obtained additional medical history. He reviewed her symptoms and determined that her throat pain was of sudden onset and that she was not experiencing back or chest pain. Menolascino performed a physical examination and listened to Karel's heart. After ordering and reviewing an electrocardiogram (EKG) and laboratory tests, Menolascino formed a diagnosis of a severe allergic reaction to medications Karel had taken, accompanied by a high degree of anxiety. He treated her with medication administered intravenously, which reduced her symptoms. Menolascino discharged her from the facility at 9:35 p.m., with instructions to stop taking the medications which he believed had triggered the allergic reaction and to see her primary physician in 2 to 3 days to have her blood pressure rechecked. Menolascino advised Karel to return to Clarkson West if she experienced further symptoms.

Karel returned to Clarkson West a few hours later at approximately 2:20 a.m. on September 28, 2000, complaining of neck pain. Menolascino again listened to Karel's heart and this time detected a murmur which had not been present at the time of his earlier examination. This caused him to suspect a potentially catastrophic condition involving her aorta. Karel was moved to a higher acuity room and, at 2:45 a.m., given a medication to reduce her blood pressure and slow down her heart rate. At 2:50 a.m., another EKG was conducted, and at 3 a.m., a chest x ray was obtained. Menolascino concluded that Karel needed to be transported to a hospital for additional tests and began making arrangements for her transfer. Menolascino testified that it was Clarkson West's policy to transfer a patient only after the patient's primary care physician was notified and the accepting

hospital confirmed that it had a bed available. Clarkson West's director at the time of Karel's admission testified that the transfer policy then in effect required the "prior approval" of the receiving facility, meaning that the receiving facility must "have the resources to take care of that patient," including a bed for the patient. An expert testified on behalf of Karel, however, that a patient in an unstable condition such as Karel should be immediately transferred to a care center of "greater level" and that such transfer would not violate "EMTALA," a federal law designed to protect patients by preventing transfers to hospitals without resources to treat the patient. He opined that the law did not require the receiving facility to have a bed if the patient being transferred was unstable and in need of greater care.

Menolascino testified that it was Clarkson West's policy not to call an ambulance squad to transfer a patient until it received notification from the accepting hospital that a bed was available. At 3:50 a.m., Clarkson West was notified by the University of Nebraska Medical Center that it had a bed, and an ambulance was called. Karel left in the ambulance at 4:25 a.m., with the records of all her tests and treatments done at Clarkson West and Menolascino's orders.

Those orders, written at 4 a.m., provided: "Admit ICU. Dx suspect Acute aortic regurgitation vs ascending aorta tear[.] Condition guarded[.] Contact cardiology for consult. Get emergent echocardiogram." Karel arrived at the University of Nebraska Medical Center's intensive care unit at 4:57 a.m. Although Menolascino had ordered an "emergent" echocardiogram, it was not until 7:10 a.m. that a cardiology consult and "transthoracic echo" were ordered by the medical center's doctors. Karel went into cardiac arrest and died at 8:59 a.m. An autopsy revealed that she died of an aortic dissection, a tearing of the inner lining of her aorta.

Karel's father, the special administrator of her estate, brought this action on behalf of the estate and Karel's minor son against Menolascino and Clarkson West. Menolascino and Clarkson West filed a pretrial motion in limine to prohibit the special administrator from presenting evidence related to print and radio advertisements produced by Clarkson West during the time period immediately prior to Karel's death. They alleged that the

advertisements were irrelevant and that even if relevant their probative value was outweighed by their prejudice. The district court sustained the motion in limine.

At trial, the special administrator presented the testimony of Martin Beerman, marketing director for Clarkson West's parent entity, as an offer of proof. Beerman testified that in 1999 and 2000, he promoted Clarkson West through an advertising campaign. The goals of the campaign were to inform the public of what services the facility offered, including that it was open 24 hours a day, 7 days a week, including holidays. The campaign used print and radio advertisements directed at women between the ages of 35 to 54 because it was understood that they made the most health care decisions for their families. The campaign emphasized the convenience of the location, the 24-hour availability, and the capability and comprehensiveness of the facility. The radio advertisements played on more than 100 occasions in both 1999 and 2000, and the print advertisements appeared in the Omaha World-Herald newspaper 12 to 16 times during each of the 2 years.

Beerman testified that the advertisements used words designed to convey the capability of the facility, the technology available at the facility, and the facility's quality of care. He testified that the advertisements represented that the doctors at the facility were capable and competent in using the technology and that if seconds mattered and when life-threatening conditions occurred, people could come to Clarkson West. During Beerman's testimony, the special administrator attempted to offer a compact disc containing the radio advertisement and printouts of the newspaper advertisement. The district court sustained the defendants' relevancy objections to the exhibits and the offer of proof.

The jury returned a verdict in favor of the defendants, and the special administrator filed this timely appeal, which we moved to our docket based on our statutory authority to regulate the caseloads of the appellate courts of this state.[1]

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENTS OF ERROR

The special administrator assigns, restated and consolidated, that the district court erred in (1) ruling that he was not entitled to present the testimony and exhibits offered by Clarkson West's marketing director, (2) failing to instruct the jury that it could return a verdict against Clarkson West for its independent negligence, (3) instructing the jury that violations of the federal Emergency Medical Treatment and Labor Act could result in civil and criminal penalties, and (4) denying his motion for new trial.

## STANDARD OF REVIEW

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by such rules; judicial discretion is involved only when the rules make such discretion a factor in determining admissibility.[2] A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion.[3]

Whether a jury instruction given by a trial court is correct is a question of law.[4] When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.[5]

## ANALYSIS

At trial, there was conflicting expert testimony as to whether Menolascino met the applicable standard of care in his diagnosis and treatment of Karel. The jury resolved this factual dispute in favor of Menolascino. On appeal, the special administrator does not challenge the jury's finding in this regard, and we therefore do not examine this issue. This appeal instead focuses

---

[2] *In re Trust of Rosenberg*, 273 Neb. 59, 727 N.W.2d 430 (2007); *Roth v. Wiese*, 271 Neb. 750, 716 N.W.2d 419 (2006).

[3] *Green Tree Fin. Servicing v. Sutton*, 264 Neb. 533, 650 N.W.2d 228 (2002); *Sharkey v. Board of Regents*, 260 Neb. 166, 615 N.W.2d 889 (2000).

[4] *Worth v. Kolbeck*, 273 Neb. 163, 728 N.W.2d 282 (2007); *Castillo v. Young*, 272 Neb. 240, 720 N.W.2d 40 (2006).

[5] *Id.*

on whether the district court committed error with respect to the special administrator's allegations of Clarkson West's independent negligence.

## MARKETING EVIDENCE

■ The special administrator asserts that Beerman's evidence relating to the marketing campaign conducted by Clarkson West in the years prior to Karel's death was relevant to a determination of the applicable standard of care. Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.[6] For evidence to be relevant, all that must be established is a rational, probative connection, however slight, between the offered evidence and a fact of consequence.[7]

■ In a malpractice action involving professional negligence, the burden of proof is upon the plaintiff to demonstrate the generally recognized medical standard of care, that there was a deviation from that standard by the defendant, and that the deviation was the proximate cause of the plaintiff's alleged injuries.[8] Obviously, the marketing materials do not pertain to the specific medical care received by Karel at Clarkson West. However, we understand the special administrator to contend that the marketing evidence is relevant to the standard of care to which Clarkson West should be held. We find no indication in the record that Clarkson West claimed to be anything other than a full-service emergency room open 24 hours per day and capable of addressing life-threatening conditions; Menolascino's deposition testimony offered in evidence by the special administrator confirmed this fact. The jury was instructed that "[a] physician of an emergency room has the duty to possess and

---

[6] Neb. Rev. Stat. § 27-401 (Reissue 1995). See, also, *V.C. v. Casady*, 262 Neb. 714, 634 N.W.2d 798 (2001); *Snyder v. Contemporary Obstetrics & Gyn.*, 258 Neb. 643, 605 N.W.2d 782 (2000).

[7] See, *V.C. v. Casady, supra* note 6; *Snyder v. Contemporary Obstetrics & Gyn., supra* note 6.

[8] *Snyder v. Contemporary Obstetrics & Gyn., supra* note 6; *Doe v. Zedek*, 255 Neb. 963, 587 N.W.2d 885 (1999).

use the care, skill, and knowledge ordinarily possessed and used under like circumstances by other emergency room physicians engaged in a similar practice in the same or similar community." The marketing materials would add or subtract nothing with respect to the nature of the facility for purposes of defining the applicable standard of care. And, as one court has recently noted in concluding that a hospital's marketing materials were not even discoverable, the standard of care "in a medical malpractice action is measured against local, statewide, or nationwide standards and the 'superior knowledge and skill' that a provider actually possesses, . . . not against the knowledge and skill that the provider claims to possess in its advertising."[9]

In its petition, the special administrator alleged that the marketing materials "misled . . . Karel . . . to believe that Clarkson West . . . was staffed by individuals who possessed the requisite knowledge and skill to identify serious and life-threatening conditions and to properly attend to those conditions in a timely and expedient manner." We, like the trial court, read this allegation as one for negligent misrepresentation. One of the elements of a cause of action for negligent misrepresentation is justifiable reliance on the part of the plaintiff.[10] Neither the offer of proof nor any other part of the record affords any basis for concluding that Karel relied upon or was even aware of the marketing activities undertaken by Clarkson West when she chose to seek medical care at the facility. We conclude that the district court did not abuse its discretion in sustaining the relevancy objections to the marketing materials.

### JURY INSTRUCTION ON CLARKSON WEST'S NEGLIGENCE

The special administrator assigns error by the district court in failing to instruct the jury that it could return a verdict against Clarkson West for its negligence. The record includes a stipulation that following the instruction conference, the trial court submitted to counsel jury forms which it proposed to submit, at

---

[9] *McCullough v. University of Rochester*, 17 A.D.3d 1063, 1064, 794 N.Y.S.2d 236, 237 (2005) (citation omitted).

[10] *Washington Mut. Bank v. Advanced Clearing, Inc.*, 267 Neb. 951, 679 N.W.2d 207 (2004).

which time counsel for the special administrator objected to the court's failure to include a jury form on which the jury could find solely against Clarkson West for its separate negligence. The proposed verdict form is not itself in the record. The verdict forms given to the jury permitted a verdict only for or against "the Defendants." On appeal, the special administrator argues that the failure to give the separate form to the jury was error.

The record does not reflect that the special administrator requested a specific jury instruction regarding negligence on the part of Clarkson West independent of that alleged on the part of Menolascino. In his proposed instruction, which included the statement of the case, the special administrator asserted his claim that the "defendants" were negligent in one or more of eight particulars. The statement of the case instruction given by the court utilized substantially similar introductory language, but included only five of the eight particulars. The special administrator did not make a specific objection to this instruction, but when asked if he had any proposed corrections or additions, counsel replied, "Only as were set out in the instructions that I've offered the Court." On appeal, he does not specifically argue that the jury instructions given were erroneous.

The special administrator also requested the following instruction, based upon NJI2d Civ. 6.30, the essential substance of which was given by the court:

Professional corporation can act only through its employees or agents. A corporation is bound by the knowledge possessed by its employees and agents. It is also bound by the acts and omissions of its employees performed within the scope of their employment.

At the time of treatment rendered to Tina Karel, Dr. Scott Menolascino was acting within the scope of his duties with Clarkson West Emergi[C]are. That means that if you find that Dr. Menolascino is liable to the estate of Tina Karel . . . then you must also find that Clarkson West EmergiCare and Nebraska Health Systems doing business as Clarkson West EmergiCare are also liable to the estate of Tina Karel . . . .

Thus, the jury was instructed as to the defendants' alleged negligence exactly in the manner proposed by the special

administrator, except for the deletion of three specifications of negligence in the statement of the case. The first of these involved the claim that Clarkson West "held itself out as an emergency room capable of handling sudden or life threatening injuries or illness and capable of providing CT scans on site." As we have noted above, this allegation does not relate specifically to the medical care provided to Karel, and to the extent it is asserted as a negligent misrepresentation claim, it is unsupported by the record.

The second of the negligence specifications included in the proposed statement of the case instruction but deleted from the instruction given was a claim that defendants were negligent "[i]n failing to properly investigate, monitor and ascertain that its employees possessed the requisite knowledge, skill and training to work in an emergency room setting with patients like Tina Karel who would present with life threatening conditions." This claim presumes that Clarkson West employees did not possess such knowledge, skill, and training, and is therefore subsumed within the specific claims of negligence directed at Menolascino, the only Clarkson West employee who is specifically alleged to have been negligent in providing medical care to Karel. The third specification of negligence requested by the special administrator but not included in the court's statement of the case instruction was an alleged failure "to adequately staff the facility so that when a determination of hospitalization was made the transfer could be facilitated in an efficient and prompt manner." This is simply a restatement of the claim submitted to the jury that the defendants were negligent in "failing to provide timely transfer from Clarkson West EmergiCare" to the hospital. A court does not err in failing to give an instruction if the substance of the proposed instruction is contained in those instructions actually given.[11] In reviewing a claim of prejudice from jury instructions given or refused, an appellate court must read the instructions together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and evidence, there

---

[11] *Worth v. Kolbeck, supra* note 4.

is no prejudicial error.[12] Applying this standard to the record before us, we conclude that there was no prejudicial error with respect to the jury instructions and verdict forms given by the district court.

## EMTALA Instruction

Instruction No. 14 given to the jury advised that the Emergency Medical Treatment and Labor Act (EMTALA),[13] a federal law regarding the transferring of patients between health care facilities, contained certain provisions. One provision was that an "appropriate transfer" occurred when the "receiving facility" "has available space" and "has agreed to accept transfer of the individual." Instruction No. 14 further provided: "A violation of [EMTALA] can result in [a] significant monetary fine. (This is not the verbatim language from this subsection, but a synopsis.)"

■ The special administrator argues on appeal that the court erred in giving the instruction because it addressed the "civil and criminal penalties associated with violation of EMTALA" and confused the jury.[14] In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant.[15] We find nothing in the language of this instruction that could have prejudiced Karel or confused the jury.

## Denial of Motion for New Trial

The special administrator asserts that the district court erred in denying his motion for new trial. All of the grounds he asserts as error in this appeal were asserted in support of his motion for new trial. For the reasons discussed herein, the district court did not err in denying the motion for new trial.

---

[12] *Orduna v. Total Constr. Servs.*, 271 Neb. 557, 713 N.W.2d 471 (2006).

[13] 42 U.S.C. § 1395dd (2000 & Supp. IV 2004).

[14] Brief for appellants at 16.

[15] *Orduna v. Total Constr. Servs.*, supra note 12; *Shipler v. General Motors Corp.*, 271 Neb. 194, 710 N.W.2d 807 (2006).

## CONCLUSION

The special administrator's assignments of error are unsupported by the record and the applicable law. The jury verdict is affirmed.

Affirmed.