756 N.W.2d 299 (2008)
17 Neb. App. 28
SAND LIVESTOCK SYSTEMS, INC., a Nebraska corporation, et al., Appellants, and Furnas County Farms, a Nebraska general partnership formerly known as Enterprise Partners, appellee,
v.
Amy SVOBODA et al., Appellees.
No. A-06-1441.
Court of Appeals of Nebraska.
September 16, 2008.
*305 John F. Recknor, Lincoln and Randall Wertz, of Recknor, Williams & Wertz, for appellant Sand Livestock Systems.
Clark J. Grant, of Grant & Grant, for appellants Sand and Cumberland.
John C. Brownrigg, Thomas J. Culhane, and Sara A. Lamme, of Erickson & Sederstrom, P.C., Omaha, for appellee Furnas County Farms.
Charles F. Speer, Kansas City, MO, of Speer Law Firm, P.A., Richard H. Middleton, Jr., Savannah, GA, of The Middleton Firm, and Patricia A. Knapp, Lincoln, for appellees Svoboda, Hamilton, and Fortkamp.
Sean T. McAllister, Breckenridge, CO, for amicus curiae SLAPP Resource Center.
SIEVERS, MOORE, and CASSEL, Judges.
MOORE, Judge.

INTRODUCTION
Sand Livestock Systems, Inc. (Sand Livestock), Furnas County Farms (FCF), Charles W. Sand, Jr., and Timothy A. Cumberland filed suit in the district court for Keith County against Amy Svoboda, Char Hamilton, Duane Fortkamp, and Area Citizens for Resources and Environmental Concerns (ACRES), bringing actions for libel and false light invasion of privacy (defamation suit). Svoboda, Hamilton, and Fortkamp answered and brought a counterclaim against Sand Livestock, FCF, Sand, and Cumberland, alleging a violation of Neb.Rev.Stat. §§ 25-21,241 to 25-21,246 (Reissue 1995) (Nebraska's statutory provisions concerning strategic lawsuits against public participation, or "SLAPP's"). ACRES also brought a counterclaim. Following a jury trial in which ACRES did not participate, the jury found in favor of Svoboda, Hamilton, and *306 Fortkamp on the libel and false light actions and awarded damages totaling $900,000 on their anti-SLAPP counterclaim.
Sand Livestock has appealed, and FCF, Sand, and Cumberland have joined in the appeal. Throughout this opinion, we have referred collectively to Sand Livestock, FCF, Sand, and Cumberland as "the Appellants" and to Svoboda, Hamilton. Fortkamp, and ACRES as "the Appellees." Because the jury instructions given by the district court allowed the jury to determine a question of law with respect to the counterclaim, we find plain error, and we reverse, and remand for a new trial on the counterclaim between Svoboda, Hamilton, and Fortkamp and the Appellants. We affirm the portion of the judgment which found against the Appellants on the defamation suit.

BACKGROUND

Parties.
Sand Livestock is a Nebraska corporation in the business of constructing, among other things, hog confinement facilities. Sand Livestock has never owned any hogs or managed any swine operations. Sand and Cumberland are shareholders in Sand Livestock, and in 1999, Sand was the president of Sand Livestock.
FCF is a general partnership, which owns various swine operations. Sand and Cumberland are partners in FCF.
ACRES is an unincorporated organization of individuals in Hayes County, Nebraska, who were concerned about the environmental effects of having large hog lagoons located in that county. Hamilton and Fortkamp were the copresidents of ACRES and, as such, coordinated the group's activities and made certain decisions for the group. Svoboda is an attorney who was hired by ACRES to assist with local zoning matters and aid in preparing a public comment to a permit application received by the Nebraska Department of Environmental Quality (DEQ).

Dispute.
The dispute at issue in this appeal arose following an application by FCF and Sand Livestock for a permit to construct a livestock waste control facility in Hayes County. At the time of FCF and Sand Livestock's application, Nebraska's Livestock Waste Management Act required the DEQ to issue a notice providing an opportunity for any interested person to submit written comments on any application submitted to the DEQ pursuant to Neb.Rev.Stat. § 54-2409 (Reissue 1998) (since repealed). See Neb.Rev.Stat. § 54-2411 (Reissue 1998) (since transferred in part to Neb. Rev.Stat. § 54-2433 (Cum. Supp. 2006)). The DEQ issued notice of the public comment period in this case by publishing an advertisement in the Hayes County newspaper.
In response to the notice, Hamilton, on behalf of ACRES, contacted Svoboda to investigate and help prepare a public comment letter to the DEQ (the DEQ letter). The DEQ letter consisted of a cover letter, dated November 10, 2000; "Part 1," the technical comments prepared by an environmental services firm; and "Part 2," the comments prepared by Svoboda that are at issue in this case. The cover letter to the DEQ letter bears Hamilton's and Fortkamp's signatures as copresidents for ACRES. The cover letter is addressed to the director of the DEQ and states, "Please find enclosed our comments on the [FCF] (Sand Livestock...) Application for a Permit to Construct a Livestock Waste Control Facility ... in Hayes County, Nebraska." The cover letter goes on to state that the second part of the comments "contains our comments relating to [FCF's] suitability to be a permit holder *307 prepared by our attorney ... Svoboda." In the interest of brevity, we have not reproduced the contents of Part 2 of the DEQ letter in this opinion, although we have reviewed that portion of the letter carefully in conjunction with our review of the record as a whole and the applicable assignments of error.
On November 29, 2000, a demand for a retraction of Part 2 of the DEQ letter was sent by counsel on behalf of FCF, Sand, and Cumberland to Fortkamp, Hamilton, and Svoboda. Svoboda replied in an undated letter, in which she stated,
[I]f there are aspects of our statements that could be better stated we would be happy to correct them if you could inform us specifically of them. Or if you would like to set up a meeting with us and [the] DEQ to "correct the record" we would be happy to attend.
FCF and Sand Livestock received the permit from the DEQ, but did not build the facility in Hayes County due to zoning regulations that had been implemented in the meantime.

Initial Pleadings.
The Appellants filed an amended petition in this case on March 6, 2001, bringing actions against the Appellees for libel and false light invasion of privacy arising out of allegedly false and defamatory statements contained in the DEQ letter (the defamation suit). We note that the false light action was brought by Sand and Cumberland only.
On April 9, 2001, Svoboda, Hamilton, and Fortkamp answered and asserted a counterclaim based upon an alleged violation of Nebraska's anti-SLAPP statutes (the anti-SLAPP counterclaim). Specifically, Svoboda, Hamilton, and Fortkamp asserted that the defamation suit was filed for the purpose of harassing, intimidating, punishing, and maliciously inhibiting the free exercise of the Appellees' right to petition. Svoboda, Hamilton, and Fortkamp asked for attorney fees and costs pursuant to § 25-21,243, as well as compensatory damages.
The record shows that a counterclaim was also filed by ACRES but does not reveal the exact nature of that counterclaim. We have searched the voluminous transcript from both the first appeal of this case and the present appeal and have been unable to locate the actual counterclaim filed by ACRES.

Summary Judgment Proceedings.
The parties filed various motions for summary judgment and partial summary judgment. In an order filed September 14, 2005, the district court denied the various motions as to the defamation suit and the anti-SLAPP counterclaim, finding that genuine issues of material fact remained for trial on all claims.

Dismissal of ACRES.
On October 19, 2005, the Appellants filed offers to confess judgment in favor of the Appellees. Just prior to the start of trial on October 25, the Appellants agreed to dismiss ACRES as a party defendant. ACRES' attorney advised the court that ACRES had accepted the Appellants' offer to confess judgment. One of the Appellants' attorneys advised the court that the Appellants' offer was contingent upon acceptance by all of the Appellees. The court agreed that "this issue will be litigated separately at a later time" and excused ACRES' attorney from participating in the trial proceedings.

Trial.
A jury trial was held on the litigation between the Appellants and Svoboda, Hamilton, and Fortkamp on October 25 through 28, 2005. On October 28, the jury returned verdicts on the defamation suit in favor of Svoboda, Hamilton, and *308 Fortkamp against each of the Appellants. The jury also found in favor of Svoboda, Hamilton, and Fortkamp on their anti-SLAPP counterclaim, awarding damages totaling $900,000 plus court costs and attorney fees (damages of $75,000 to each participating defendant against each Appellant). On November 2, the district court entered judgment in accordance with the jury's verdicts.

Posttrial Proceedings.
The Appellants filed various posttrial motions, including several motions for new trial. The district court entered an order on December 16, 2005, ruling on the pending posttrial motions. With regard to the Appellants' motions, the court reviewed the amount of damages awarded against the Appellants on the anti-SLAPP counterclaim and stated, "The jury obviously determined that [Svoboda, Hamilton, and Fortkamp each] suffered a sizeable and equal amount of damage." The court stated further:
Although I agree with counsel for the [Appellants] that there was a dearth of evidence which was presented to the jury as to any economic damages which [Svoboda, Hamilton, and Fortkamp] sustained, there was substantial evidence adduced through the testimony of [Svoboda, Hamilton, and Fortkamp] and members of their families that they had suffered significant mental suffering, humiliation, and injury to reputation or character as a proximate result of the actions of the [Appellants]. Based upon my prior experience in numerous cases wherein juries have awarded substantial damages for pain, suffering and/or emotional distress, I cannot reasonably conclude that the verdict of the jury in this case shocks my conscience. Similarly, I cannot rationally ascertain the extent that any verdict should be reduced even if I were to believe that it was excessive. Therefore, I cannot properly require a remittitur.
The court then denied each of the Appellants' posttrial motions.

First Appeal.
On January 12, 2006, Sand Livestock filed a notice of its intention to appeal the district court's order of December 16, 2005, which appeal was designated as case No. A-06-082. Notices of appeal were also filed by FCF, Sand, and Cumberland.
On January 17, 2006, ACRES filed a motion for entry of judgment. On January 18, the district court on its own motion entered an order staying all proceedings below until further order, including a hearing on ACRES' motion for entry of judgment.
Because ACRES' counterclaim was still unresolved at the time of the appeal in case No. A-06-082, this court granted ACRES' motion for summary dismissal, citing Neb.Rev.Stat. § 25-1315(1) (Cum. Supp. 2006). The mandate summarily dismissing the appeal was issued on July 25, 2006.

Proceedings on Remand.
On November 20, 2006, the district court entered an order ruling on various pending matters, including ACRES' motion for entry of judgment. As to ACRES' motion, the district court found that there was never a meeting of the minds between counsel for the Appellants and counsel for the Appellees. The court found that the only reasonable interpretation of the offers to confess judgment was that they were lump-sum offers by the Appellants in the sums of $25,000 and $20,000, which were intended to represent a complete settlement with all the Appellees, and that they could not be accepted by a single appellee. Accordingly, the court denied ACRES' motion and indicated that, since the case was still at issue between the Appellants and *309 ACRES on the counterclaim filed by ACRES, a pretrial conference should be scheduled.
The district court then recognized that there were multiple parties involved in the litigation and, pursuant to § 25-1315(1), expressly determined that there was no just reason to delay the entry of a final judgment in the litigation between the Appellants and Svoboda, Hamilton, and Fortkamp. The court stated:
Therefore, the jury verdicts rendered in this case on October 28, 2005, together with all other orders involving the [Appellants] and ... Svoboda, Hamilton and Fortkamp, including but not limited to the [December 16, 2005, order], as well as this [order], shall be deemed final and subject to appeal, notwithstanding the fact that the claims or the rights and liabilities of the [Appellants] and ... ACRES, remain for future determination.

Second Appeal.
On December 19, 2006, Sand Livestock filed notice of its intent to appeal the district court's order of November 20, 2006, which appeal has been designated as case No. A-06-1441. A second notice of appeal was filed by FCF, and FCF has filed a brief as "Appellee and Cross-Appellant." However, FCF has not filed a cross-appeal in this matter. See Neb. Ct. R.App. P. §§ 2-101(C), 2-101(E), and 2-109(D)(4). FCF is therefore technically an appellee only. Sand and Cumberland joined in the appeal filed by Sand Livestock and the "cross-appeal" filed by FCF.
On June 29, 2007, the Nebraska Supreme Court decided Cerny v. Todco Barricade Co., 273 Neb. 800, 733 N.W.2d 877 (2007), setting forth more stringent requirements for certification of final judgments pursuant to § 25-1315(1).
ACRES filed a stipulated motion to withdraw from the appeal in case No. A-06-1441 on July 9, 2007, stating that it had been dismissed as a defendant from the case prior to trial, that it had settled its counterclaims with the Appellants, and that an order dismissing its counterclaims was entered by the district court on May 25, 2007. The stipulation was allowed, and the appeal was dismissed as to ACRES only.
This court issued an order to show cause on September 27, 2007, asking the parties why the matter should not be dismissed under Cerny v. Todco Barricade Co., supra. On October 10, FCF responded to the order by way of a supplemental brief, in which all other remaining parties have joined, urging this court to retain jurisdiction. On October 29, we issued a minute entry, allowing the appeal to proceed but reserving the issue of jurisdiction for determination after oral argument.

ASSIGNMENTS OF ERROR
Because of the similarities between and the overlap of the errors assigned by Sand Livestock on appeal and FCF in its brief on "cross-appeal," which assignments of error are joined in by Sand and Cumberland, we have reordered and restated those errors as follows: The Appellants assert (1) that the jury's verdict against the Appellants in the defamation suit was not supported by the evidence, (2) that the district court committed plain error in instructing the jury concerning the anti-SLAPP counterclaim and in submitting to the jury any issues associated with the counterclaim, (3) that the evidence at trial was insufficient to support the jury's award of damages on the anti-SLAPP counterclaim, (4) that the district court erred in not granting the Appellants' motion for new trial, and (5) that the district *310 court erred in not granting the Appellants' motion for remittitur.

STANDARD OF REVIEW
[1,2] A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law. Cerny v. Todco Barricade Co., supra. A trial court's decision to certify a final judgment pursuant to § 25-1315(1) is reviewed for an abuse of discretion. Cerny v. Todco Barricade Co., supra.
[3,4] In determining the sufficiency of the evidence to sustain a verdict in a civil case, an appellate court considers the evidence most favorably to the successful party and resolves evidential conflicts in favor of such party, who is entitled to every reasonable inference deducible from the evidence. Orduna v. Total Constr. Servs., 271 Neb. 557, 713 N.W.2d 471 (2006). A jury verdict will not be set aside unless clearly wrong, and it is sufficient if any competent evidence is presented to the jury upon which it could find for the successful party. Id.
[5, 6] Whether a jury instruction given by a trial court is correct is a question of law. Karel v. Nebraska Health Sys., 274 Neb. 175, 738 N.W.2d 831 (2007). When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. Id.

ANALYSIS

Jurisdiction.
[7] Before reaching the legal issues presented for review, it is the duty of an appellate court to settle jurisdictional issues presented by a case. Cerny v. Todco Barricade Co., 273 Neb. 800, 733 N.W.2d 877 (2007). In this case, we must first consider, as did the Nebraska Supreme Court in Cerny and this court in Murphy v. Brown, 15 Neb.App. 914, 738 N.W.2d 466 (2007), whether the district court abused its discretion in making a certification under § 25-1315(1). The district court did not explain the reasoning for its § 25-1315(1) determination, which of course was made prior to Cerny, and we again take this opportunity to encourage trial court judges to follow the direction in Cerny to make specific findings rather than just reciting the statutory language. In this case, as we did in Murphy, we examine the facts in light of the factors summarized in Cerny.
[8-10] The Cerny court determined that certification of a final judgment must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties. Cerny v. Todco Barricade Co., supra. The power § 25-1315(1) confers upon the trial judge should only be used in the infrequent harsh case as an instrument for the improved administration of justice, based on the likelihood of injustice or hardship to the parties of a delay in entering a final judgment as to part of the case. Cerny v. Todco Barricade Co., supra. When a trial court concludes that entry of judgment under § 25-1315(1) is appropriate, it should ordinarily make specific findings setting forth the reasons for its order. Cerny v. Todco Barricade Co., supra.
[11-13] The Cerny court stated that a trial court considering certification of a final judgment should weigh factors such as (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the trial court; (3) the possibility that the reviewing court might be obliged *311 to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in setoff against the judgment sought to be made final; and (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like. Cerny v. Todco Barricade Co., supra. As a starting point for considering certification of a final judgment, it is appropriate for the trial court to consider whether the claims under review are separable from the others remaining to be adjudicated and whether the nature of the claims already determined was such that no appellate court would ever have to decide the same issues more than once even if there were subsequent appeals. Id. The potential that claims remaining in the trial court could obviate claims in the appellate court is a consideration against immediate appealability. Id.
[14] In its supplemental brief, FCF argues that Cerny v. Todco Barricade Co., 273 Neb. 800, 733 N.W.2d 877 (2007), and Murphy v. Brown, 15 Neb.App. 914, 738 N.W.2d 466 (2007), do not compel dismissal of the present appeal, but, rather, allow the reviewing court to examine the facts in light of the various factors cited, which is what FCF is urging us to do. FCF suggests that this case qualifies as the "`"unusual case" in which potential hardship to the litigants outweighs the strong policy against piecemeal appeals.'" Supplemental brief for appellee Furnas County Farms at 11. FCF distinguishes this case factually from Cerny and our subsequent case of Murphy, which both involved certification after orders granting summary judgment. Specifically, Cerny involved a partial summary judgment against the plaintiffs on all but one of their claims, reserving the remaining claim for trial. Murphy involved the grant of summary judgment in favor of one defendant, but leaving the claim against the remaining defendant for later disposition.
FCF argues that in this case, all of the claims between all of the parties to this appeal were adjudicated by the judgment following the jury trial and nothing remains to be done in the district court that would affect the parties' rights and liabilities vis-a-vis one another. Because there is a full-blown trial record in this case, as opposed to summary judgment records as were involved in Cerny and Murphy, FCF argues that there is no risk in this case that the trial court might wish to reconsider its dismissal of certain claims on the complete fact record developed at trial. FCF further argues that there is no conceivable way any further action by the trial court in connection with the ACRES issues, which were still pending at the time of the certification, could moot any of the issues on the merits that are raised in this appeal, and that conversely, there is nothing that the outcome of this appeal could do to affect the rights and liabilities between the appellants and ACRES. Finally, FCF argues that delaying this appeal further would work an unusual hardship on the parties, because the lawsuit was pending over 4 years at the time of trial, judgment was rendered in November 2005, and in November 2006, the district court correctly certified that the judgment was a final order for purposes of § 25-1315(1).
We are mindful that our review concerns whether the district court abused its discretion in making the certification in November 2006 based on the facts known to it at the time; however, we are also mindful of the fact that ACRES has since been dismissed as a defendant in the underlying litigation and that an order dismissing ACRES' counterclaim has been entered. We agree that Cerny and Murphy do not require automatic dismissal in the absence *312 of detailed findings by the trial court and that in those cases, the appellate courts have reviewed the record to determine whether the trial court abused its discretion in certifying judgments as final under § 25-1315(1). We conclude that given the length of time the litigation had been pending and the fact that a full jury trial had been brought to conclusion regarding the issues between the Appellants and Svoboda, Hamilton, and Fortkamp, this is the unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties. See, Cerny v. Todco Barricade Co., supra; Murphy v. Brown, supra. Accordingly, the district court did not abuse its discretion in making the certification under § 25-1315(1), and we have jurisdiction to consider the merits of this appeal. Thus, we first consider the Appellants' assignment of error relating to the defamation suit and then consider the assignments of error relating to the anti-SLAPP counterclaim.

Sufficiency of Evidence in Defamation Suit.
[15] The Appellants assert that the jury's verdict against them in the defamation suit was not supported by the evidence. The Appellants brought claims for libel and false light invasion of privacy. "Libel is defamation where the defamatory words are written or printed...." 50 Am.Jur.2d Libel and Slander § 9 at 379 (2006). A claim of defamation requires (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. Nolan v. Campbell, 13 Neb. App. 212, 690 N.W.2d 638 (2004). The elements of a false light claim are found in Neb.Rev.Stat. § 20-204 (Reissue 1997), which provides:
Any person, firm, or corporation which gives publicity to a matter concerning a natural person that places that person before the public in a false light is subject to liability for invasion of privacy, if:
(1) The false light in which the other was placed would be highly offensive to a reasonable person; and
(2) The actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.
We note that the jury was instructed that the false light claim applied to Sand and Cumberland only.
[16] It is for the jury, as trier of the facts, to resolve conflicts in the evidence and to determine the weight and credibility to be given to the testimony of the witnesses. Orduna v. Total Constr. Servs., 271 Neb. 557, 713 N.W.2d 471 (2006). In considering the defamation suit, the jury clearly credited and gave greater weight to the evidence presented by the Appellees. We have reviewed the vast amount of evidence presented at trial by the parties, although we do not set forth the details of that evidence here in the interest of brevity. In our review, we have considered the evidence most favorably to the Appellees and have resolved evidential conflicts in their favor as we must. See id. Because the record reveals competent evidence upon which the jury could have found for the Appellees, the verdict is sufficient, and we cannot say that it was clearly wrong.

*313 What Are SLAPP's?

Before proceeding to address the merits of the Appellants' remaining assignments of error on appeal, we first provide a brief background on the origin and nature of anti-SLAPP legislation and then a summary of Nebraska's anti-SLAPP statutes.
The following commentary provides a succinct statement as to the nature and conceptual background of SLAPP's:
SLAPP is the acronym for "Strategic Lawsuits Against Public Policy," [which have been] described ... in the literature as intimidation lawsuits against citizen advocates.... [I]t has become generally accepted that there is a large and growing constellation of lawsuits that are fashioned as traditional lawsuits for tortious misconduct but are in actuality thinly-disguised efforts to abuse the litigation process in order to silence citizen discussions on issues affecting the public well-being.
The purpose of the SLAPP, it is asserted, is distinctly not to succeed on the merits, but to so intimidate the private citizen (or even the government official) that citizen activity ceases because the expense, risk and anxiety engendered by the process of litigating a SLAPP is too great. The SLAPP plaintiff does not intend  nor often succeed  on the merits, but achieves the intended result essentially by abusing the litigation process for an improper purpose or engaging in "frivolous" litigation.
SLAPP-back procedures, actions and statutory actions arising out of state Public Participation or anti-SLAPP statutes seek to cure this abuse in addition to special procedural mechanisms developed by individual courts.
SLAPPs are not simply matters of private injustices. United States Supreme Court decisional law ... makes it explicitly clear that when such conduct exists, paramount public law issues of freedom to exercise First Amendment right of expression and right to petition the government for redress are directly involved.
While many federal and state courts have now acknowledged SLAPPs and the need to combat them under federal and state constitutional principles, variations locally occur in the procedural mechanics and remedies applied to cure them.
Cause of Action: Bringing and Defending Anti-SLAPP Motions to Strike or Dismiss, 22 C.O.A.2d 317, 322, § 2 (2003). See, also, 2 Rodney A. Smolla, Law of Defamation § 9:107 (2d ed. 2008); California Anti-SLAPP Project, What are SLAPPs?, http://www.casp.net/slapps/ mengen.html (last visited April 21, 2008).
Nebraska's statutory scheme concerning public petition and participation was enacted in 1994. See §§ 25-21,241 to 25-21,246. In enacting these sections, the Legislature determined that "[i]t is the policy of the state that the constitutional rights of citizens and organizations to be involved and participate freely in the process of government must be encouraged and safeguarded with great diligence." § 25-21,241(1). The Legislature further determined that "[t]he threat of [SLAPP's], personal liability, and burdensome litigation costs significantly chills and diminishes citizen participation in government, voluntary public service, and the exercise of these important constitutional rights." § 25-21,241(3). The Legislature also determined that the purpose of §§ 25-21,241 to 25-21,246 is "to strike a balance between the rights of persons to file lawsuits for injury and the constitutional rights of persons to petition, speech, and association," among other things, and "to protect and encourage public participation in government," "to establish an *314 efficient process for identification and adjudication of [SLAPP's]," and "to provide for costs, attorney's fees, and actual damages." § 25-21,241(4).
Nebraska limits coverage of its anti-SLAPP statutes by the identity of the "slapper." Nebraska defines an "[a]ction involving public petition and participation" as "an action, claim, cross-claim, or counterclaim for damages that is brought by a public applicant or permittee and is materially related to any efforts of the defendant to report on, comment on, rule on, challenge, or oppose the application or permission." § 25-21,242(1). Other states limiting the protection of their anti-SLAPP statutes to situations where the "slapper" is an applicant or permittee seeking approval before a government agency include New York and Delaware. See, N.Y. Civ. Rights §§ 70-a and 76-a (McKinney Cum. Supp. 2008); N.Y.C.P.L.R. §§ 3211(g) and 3212(h) (McKinney 2005); Del.Code Ann. tit. 10, §§ 8136 to 8138 (1999).
The provision of Nebraska's anti-SLAPP statutes which is most relevant to our consideration in the present appeal is § 25-21,243(1). Section 25-21,243(1) details when a defendant may bring an anti-SLAPP counterclaim, and what damages may be recovered in such a counterclaim, and provides as follows:
A defendant in an action involving public petition and participation may maintain an action, claim, cross-claim, or counterclaim to recover damages, including costs and attorney's fees, from any person who commenced or continued such action. Costs and attorney's fees may be recovered upon a demonstration that the action involving public petition and participation was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification, or reversal of existing law. Other compensatory damages may only be recovered upon an additional demonstration that the action involving public petition and participation was commenced or continued for the purpose of harassing, intimidating, punishing, or otherwise maliciously inhibiting the free exercise of petition, speech, or association rights.
We also note §§ 25-21,245 and 25-21,246, which provide for expedited review of motions to dismiss and motions for summary judgment, respectively, in actions involving public petition and participation, which may be defeated upon a showing by the party responding to the motion that the original SLAPP action "has a substantial basis in law [fact and law in the case of a motion for summary judgment] or is supported by a substantial argument for an extension, modification, or reversal of existing law."

Submission of Counterclaim to Jury.
[17-20] The Appellants assert that the district court committed plain error in instructing the jury concerning the anti-SLAPP counterclaim and in submitting to the jury any issues associated with the counterclaim; however, the Appellants did not object to the jury instruction in question. Failure to object to a jury instruction after it has been submitted to counsel for review precludes raising an objection on appeal absent plain error. Houston v. Metrovision, Inc., 267 Neb. 730, 677 N.W.2d 139 (2004). Plain error may be asserted for the first time on appeal or be noted by an appellate court on its own motion. Worth v. Kolbeck, 273 Neb. 163, 728 N.W.2d 282 (2007). Plain error exists where there is an error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in *315 damage to the integrity, reputation, and fairness of the judicial process. Id. We have reviewed the jury instruction on the counterclaim for plain error, because the trial court, whether requested to do so or not, has a duty to instruct the jury on issues presented by the pleadings and the evidence. Nguyen v. Rezac, 256 Neb. 458, 590 N.W.2d 375 (1999). In our plain error review, we have considered the following questions raised by the Appellants in connection with the submission of the counterclaim to the jury: (1) whether in surviving the summary judgment motions directed at the defamation suit, the Appellants established a "substantial basis in fact and law" sufficient to defeat the counterclaim; (2) whether the court improperly instructed the jury on a question of law; and (3) in the event that the counterclaim involved a question of fact for the jury, whether the instruction given was proper.
[21] We first consider the Appellants' argument that because the defamation suit survived a motion for summary judgment, it had a substantial basis in fact and law and thus the counterclaim should not have been submitted to the jury. We reject the Appellants' argument based upon our consideration of Anderson Development Co. v. Tobias, 116 P.3d 323 (Utah 2005), wherein the Utah Supreme Court considered this same question. The Utah anti-SLAPP statutes have a provision similar to Nebraska's § 25-21,243, allowing a defendant in a SLAPP action to file a counterclaim for the recovery, among other things, of costs and attorney fees upon a demonstration that the SLAPP action "was commenced or continued without a substantial basis in fact and law." Utah Code Ann. § 78-58-105 (2002). In the Anderson Development Co. case, the plaintiff argued on appeal that its claim had a substantial basis in fact and law because the claim had survived a motion for summary judgment. The Utah Supreme Court disagreed, finding that meeting the summary judgment threshold was not the equivalent of demonstrating that the plaintiff's claim was supported by a substantial basis in fact and law. Specifically, the court stated:
Because dismissal of a claim based on either a motion to dismiss or a motion for summary judgment denies the nonmoving party of the right to litigate his claim on the merits, the threshold for surviving such a motion is relatively low. See Buckner v. Kennard, 2004 UT 78, ¶ 9, 99 P.3d 842 ("Only if it is clear that the claimant is not entitled to relief under any state of facts that could be proven to support the claim should a motion to dismiss be granted."); Staker v. Ainsworth, 785 P.2d 417, 429 (Utah 1990) ("To successfully oppose a motion for summary judgment, it is not necessary for the party to prove its legal theory. Indeed, it only requires one sworn statement to dispute the claims on the other side of the controversy and create an issue of fact." (footnote omitted)). Meeting this threshold does not equate to a demonstration that the claims are supported by a substantial basis in fact and law. Accordingly, [the defendants] may properly pursue their [anti-SLAPP counterclaim] despite the fact that [the plaintiff's] claim against them for intentional interference with economic relations survived a motion to dismiss and motions for summary judgment.
116 P.3d at 337.
[22] In Nebraska, the overruling of a motion for summary judgment does not decide any issue of fact or proposition of law affecting the subject matter of the litigation, but merely indicates that the court was not convinced by the record that there was not a genuine issue as to any material fact or that the party offering the *316 motion was entitled to judgment as a matter of law. Big River Constr. Co. v. L & H Properties, 268 Neb. 207, 681 N.W.2d 751 (2004). As did the Anderson Development Co. court, we conclude that meeting the summary judgment threshold in this case was not the equivalent of demonstrating that the defamation suit was supported by a substantial basis in fact and law. In ruling on the motions for summary judgment, the district court simply found genuine issues of material fact as to both the defamation suit and the counterclaim. We note that none of the motions for summary judgment in this case sought summary judgment under § 25-21,246 (the anti-SLAPP summary judgment statute), and we express no opinion as to the effect of a ruling by the district court under that section.
We next consider whether the district court improperly allowed the jury to consider a question of law by instructing the jury to determine whether the Appellants had demonstrated that the defamation suit "was commenced or continued without a substantial basis in fact and law."
We have reviewed the case law from the jurisdictions with anti-SLAPP statutes with a "substantial basis" standard for overcoming an anti-SLAPP counterclaim and have found no guidance in interpreting this standard to determine whether a question of law, a question of fact, or a mixed question of fact and law is involved. See, §§ 25-21,241 to 25-21,246; N.Y. Civ. Rights §§ 70-a and 76-a; N.Y.C.P.L.R. §§ 3211(g) and 3212(h); Utah Code Ann. §§ 78-58-101 to XX-XX-XXX (2002); Del. Code Ann. tit. 10, §§ 8136 to 8138.
Certain other states impose a "probability of success on the claim" standard. See, generally, Cal.Civ.Proc.Code §§ 425.16 to 425.18 (West Cum. Supp. 2008); La.Code Civ. Proc. Ann. art. 971 (2005). There is case law from both California and Louisiana stating that the determination regarding the probability of success on the claim under the anti-SLAPP statutes in those states is a question of law. See, 1100 Park Lane Associates v. Feldman, 160 Cal. App.4th 1467, 74 Cal.Rptr.3d 1 (2008); Zamos v. Stroud, 32 Cal.4th 958, 87 P.3d 802, 12 Cal.Rptr.3d 54 (2004); Lee v. Pennington, 830 So.2d 1037 (La.App.2002). While the case law from these jurisdictions provides some guidance, we note that the anti-SLAPP statutes in California and Louisiana provide only for special motions to dismiss and not for bringing of a counterclaim for damages as do Nebraska's statutes. See, §§ 25-21,241 to 25-21,246; Cal.Civ.Proc.Code §§ 425.16 to 425.18; La. Code Civ. Proc. Ann. art. 971.
[23] In evaluating the "substantial basis in fact and law" standard found in Nebraska's anti-SLAPP statutes, we find some guidance in Nebraska's case law concerning malicious prosecution. In a malicious prosecution case, the necessary elements for the plaintiff to establish are (1) the commencement or prosecution of the proceeding against him or her; (2) its legal causation by the present defendant; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage, conforming to legal standards, resulting to the plaintiff. Holmes v. Crossroads Joint Venture, 262 Neb. 98, 629 N.W.2d 511 (2001).
[24] In Rose v. Reinhart, 194 Neb. 478, 233 N.W.2d 302 (1975), the Nebraska Supreme Court addressed the question of whether the "probable cause" determination in a malicious prosecution action was one for the court or for the jury. The plaintiff brought the action as a result of the defendant, a bank president, causing a criminal complaint to be filed against the plaintiff for uttering an insufficient fund *317 check with intent to defraud. The jury verdict awarded damages to the plaintiff. On appeal, the court determined that the bank's motion for directed verdict should have been sustained and, accordingly, the judgment was reversed and remanded with directions to dismiss the plaintiff's petition. In so holding, the court found that the facts were sufficient to demonstrate probable cause as a matter of law. The court noted that "`[t]he existence or lack of probable cause is the very gist of an action for malicious prosecution. The question to be decided is whether there is sufficient uncontradicted evidence to show the existence of probable cause at the time the complaint was filed.'" Id. at 481, 233 N.W.2d at 304, quoting Jones v. Brockman, 190 Neb. 15, 205 N.W.2d 657 (1973). The court also noted that want of probable cause is an essential and indispensable element of a malicious prosecution action in either a civil or criminal action, "`"no matter what the results."'" Id., quoting Brumbaugh v. Frontier Refining Co., 173 Neb. 375, 113 N.W.2d 497 (1962). The court defined probable cause as a reasonable ground of suspicion, supported by facts and circumstances of such a nature as to justify a cautious and prudent person in believing that the accused was guilty. Id.
[25] In Jones v. Brockman, supra, the Nebraska Supreme Court also determined that the existence of probable cause in a malicious prosecution case was a question of law for the court and not an issue of fact for the jury. In that case, the defendant, a special deputy sheriff, was attempting to serve the plaintiff with a legal notice. The plaintiff was subsequently charged with resisting an officer. In affirming the trial court's grant of summary judgment in favor of the defendant, the Supreme Court assumed that the trial judge predicated his ruling on the premise that the facts and circumstances established by uncontradicted evidence were sufficient to establish probable cause for the criminal prosecution. The court reiterated an earlier holding in which the court said, "`"Whether facts and circumstances established by uncontradicted evidence amount to probable cause for a criminal prosecution is a question of law for the court, and not an issue of fact for the jury. This is not only the law of Nebraska, but is a generally accepted rule."'" Id. at 17, 205 N.W.2d at 659, quoting Kersenbrock v. Security State Bank, 120 Neb. 561, 234 N.W. 419 (1931). The court in Jones concluded that while some of the facts supporting probable cause were disputed by the plaintiff's testimony, there were other undisputed facts upon which the defense of probable cause might be predicated. The court held that in such circumstances, the question of probable cause is one of law for the court.
In the present case, the court instructed the jury concerning the issues, burden of proof, effect of findings, and defenses applicable to the libel and false light causes and to the counterclaim. We note the jury was instructed that the burden of proof as to the libel and false light causes was clear and convincing evidence and that the burden applicable to the counterclaim was the greater weight of the evidence, which burdens were defined in a separate instruction. Specifically, with regard to the burden of proof on the counterclaim, instruction No. 7 provided:
Before one or more of the [Appellees] can recover against one or more of the [Appellants] on the [Appellees'] counterclaim in this action, [an appellee] must prove by the greater weight of the evidence, each and all of the following:
1(a)[.] That this lawsuit was commenced or continued by the [Appellants] against the [Appellees] without a substantial basis in fact and law; (Consider *318 1(b) only if you have found that 1(a) is true)
1(b)[.] That the [Appellants'] lawsuit was commenced or continued for [the] purpose of harassing, intimidating, punishing, or otherwise maliciously inhibiting the free exercise of petition, speech, or association rights of the [Appellees]; and
2. That these actions on the part of the [Appellants] were a proximate cause of some damage to one or more of the [Appellees]; and
3. the nature and extent of that damage.
The need for the jury to make a determination of whether the litigation was "commenced or continued without a substantial basis in fact and law" was also referenced several times in the jury instruction concerning the award of damages. The jury was not given a definition of "substantial basis in fact and law" or any information as to under what set of circumstances the Appellants would or would not have had a substantial basis in fact and law for commencing or continuing the litigation.
One of the difficulties in this case with the instructions relating to the counterclaim is that the instructions left the jury with no way to distinguish between a finding that the Appellants did not prove their case in the defamation suit and a finding that the Appellants did or did not have a substantial basis in fact and law for commencing or continuing the defamation suit. The concern we have with allowing the jury in this case to make the "substantial basis" determination was aptly discussed by the California Supreme Court in a malicious prosecution case, wherein the court discussed the propriety of allowing the jury to make the probable cause determination:
An important policy consideration underlies the common law rule allocating to the court the task of determining whether the prior action was brought with probable cause. The question whether, on a given set of facts, there was probable cause to institute an action requires a sensitive evaluation of legal principles and precedents, a task generally beyond the ken of lay jurors, and courts have recognized that there is a significant danger that jurors may not sufficiently appreciate the distinction between a merely unsuccessful and a legally untenable claim.
Sheldon Appel Co. v. Albert & Oliker, 47 Cal.3d 863, 875, 765 P.2d 498, 504, 254 Cal.Rptr. 336, 342 (1989).
[26] We conclude that it was plain error for the trial court to allow the jury to determine the question of whether the Appellants had a substantial basis in fact and law to commence or continue the defamation suit. Essentially, this question revolves around the legal validity of the defamation claim and is uniquely within the province of the court. We sympathize with the trial court, given the dearth of guidance in the area of anti-SLAPP claims in general and, particularly, what is appropriate for the jury to decide. Nevertheless, because the jury was allowed to determine a question of law, the substantial rights of the Appellants were prejudicially affected such that we are required to reverse the judgment of the district court.
[27] We hold that under § 25-21,243(1), a trial court must first determine as a matter of law whether the action involving public petition and participation was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification, or reversal of existing law. If the court determines that a substantial basis did exist, then the court should direct a verdict against the *319 anti-SLAPP claim. If the court determines that a substantial basis did not exist, then the jury (unless a jury is waived) should be instructed to determine the second portion of § 25-21,243(1), namely, whether the action involving public petition and participation was commenced or continued for the purpose of harassing, intimidating, punishing, or otherwise maliciously inhibiting the free exercise of petition, speech, or association rights. In addition, the jury should decide the compensatory damages, if any, to be awarded under this portion of the statute.

Remaining Assignments of Error.
[28] Given our resolution of the above assignment of error, we need not address the Appellants' remaining assignments of error. An appellate court is not obligated to engage in an analysis which is not needed to adjudicate the controversy before it. Papillion Rural Fire Prot. Dist. v. City of Bellevue, 274 Neb. 214, 739 N.W.2d 162 (2007).

CONCLUSION
We affirm that portion of the judgment which found against the Appellants on their defamation suit. We reverse the judgment of the district court and remand for a new trial on the counterclaim between Svoboda, Hamilton, and Fortkamp and the Appellants, consistent with this opinion.
AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR A NEW TRIAL.